**Alan G. STEVENS, Plaintiff,**

v.

**EQUIDYNE EXRACTIVE INDUSTRIES 1980, PETRO/COAL PROGRAM 1, Equidyne 1980 Oil and Gas Associates I, Equidyne 1980 Coal Venture, Equidyne Extractive Industries, Inc., Equidyne Corporation, Eastland Drilling Corporation, Inland Drilling Company, Inc., Eastern Mining Systems, Inc., Eastland Industries, Inc., Stuart R. Ross, Joel I. Beeler, Peter P.R. Rock, Robert H. Liebmann, Robson, Miller & Osserman and Marks Shron and Company, Mark Schwarz and Wofsey Certilman, Haft, Lebow, Balin, Buckley & Kremer, Defendants.**

**No. 86 Civ. 9173 (RWS).**

United States District Court, S.D. New York.

July 28, 1988.

Jackson & Nash, New York City (Christopher S. Rooney, Robin Gerofsky, of counsel), for plaintiff.

Gordon & Silber, P.C., New York City (Peter T. Neill, of counsel), for defendant Robson, Miller & Osserman.

D'Amato & Lynch, New York City (Alfred A. D'Agostino, Jr., of counsel), for defendants Mark Schwarz and Wofsey, Certilman, Haft, Lebow, Balin & Kremer.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Vincent R. Fonta-

na, Andrew J. Entwistle, of counsel), for defendant Marks Shron.

## OPINION

SWEET, District Judge.

Defendants Marks Shron & Company ("Shron"), Robson, Miller & Osserman ("Robson"), Mark Schwarz ("Schwarz"), and Wofsey, Certilman, Haft, Lebow, Balin, Buckley & Kremer ("Wofsey") have moved to dismiss the action filed against them by Alan G. Stevens ("Stevens") for failure to plead fraud with particularity pursuant to Rule 9(b), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P., for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and for failure to bring an action within the relevant statute of limitations. For the reasons set forth below, the action will be dismissed in part with respect to Robson and will be wholly dismissed with respect to the remaining defendants.

*Facts*

This action arises out of Stevens' investment in the limited partnership Equidyne Extractive Industries 1980 Petro/Coal Program I ("Equidyne 1980").[1] Equidyne 1980 was described in the Offering Memorandum as a "combined energy program consisting of a coal venture and a gas and oil partnership," whereby each investor received a participating interest in the coal venture and each became a limited partner in the gas and oil partnership. (amended complaint ¶ 5).

According to Stevens, Robson, as counsel to Equidyne, drafted or participated in drafting the discussion of legal tax issues contained in an Opinion Letter attached to the Offering Memorandum and was present as legal tax counsel on the closing of Equidyne 1980 on December 31, 1980. Stevens also asserts that Robson was his personal counsel at the time of the investment.

Shron was accountant to Equidyne 1980. It was responsible for projections for the Pro Forma Statement appended to the Offering Memorandum, and for the preparation of the tax returns and K–1 statements for the partners of Equidyne 1980.

Stevens claims that he was defrauded into investing in a worthless endeavor by his reliance on misrepresentations made by the Equidyne Group and by the defendants herein. He claims that the parties knew at the time the projections were made that they were false in that the quantities of coal in the mine were inflated, that there was no intention to mine or drill, and that there was no intention to purchase equipment for the projects. Additionally, Stevens claims that the tax consequences predicted regarding deductible losses were false and misleading.

Stevens contends that he became aware that the facts had been misrepresented in December 1982 when Joel Beeler ("Beeler"), a representative of Equidyne 1980 and a defendant in this case, informed him that there had been no mining or drilling activity. At that time, according to Stevens, the Equidyne defendants offered to exchange Beeler's interest in another investment vehicle, Equidyne 1979, for Stevens' Equidyne 1980 interest. A general release dated June 15, 1983 releasing all Equidyne defendants, affiliates, and subsidiaries was thus executed.

Stevens allegedly agreed to the exchange in reliance upon representations made by Wofsey and Schwarz, the latter an attorney who was a member of Wofsey. However, he subsequently discovered that the interest in Equidyne 1979 was worthless. Wofsey had been counsel to Equidyne 1979.

*Procedural Background*

In April of 1985, Stevens, together with Vincent DiVittorio ("DiVittorio"), another investor, filed suit against those involved in Equidyne 1979. That complaint made allegations similar to those asserted here. Stevens withdrew from that suit in response to a Rule 9(b) motion. DeVittorio amended

---

**1.** The various Equidyne defendants are not parties to this motion and thus are not set forth in detail here.

the complaint to eliminate all references to Stevens. However the Honorable Richard Owen dismissed the complaint for failure to plead fraud with particularity. The Second Circuit affirmed the dismissal of the claims against the lawyers, Wofsey, and the accountant, Shron.

Stevens filed a complaint in this action on November 28, 1986 and an amended complaint on September [10], 1987. The instant motions were filed on November 12, 13, and 27, 1987, and oral argument was held on April 22, 1988.

*Discussion*

### I. Section 10(b)

Shron and Robson have moved to dismiss the claims against them under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 for failure to plead fraud with particularity under Rule 9(b), Fed.R.Civ.P., and for failure to state a claim for which relief may be granted under Rule 12(b)(6), Fed.R.Civ.P.

### A. Pleading Fraud with Particularity

In order to set forth a claim of fraud, allegations must be pleaded with particularity pursuant to Rule 9(b), Fed.R.Civ.P. Rule 9(b) reads:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally.

*See Shemtob v. Shearson*, 448 F.2d 442, 444 (2d Cir.1971). This requirement is applicable to claims under section 10(b). *See e.g., Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986); *Ross v. A.H. Robins*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

Rule 9(b) is satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made,

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making the same),

(3) the content of such statements and the manner in which they misled the [victim], and

(4) what the defendants "obtained" as a consequence of the fraud. (footnote omitted)

*Beck v. Manufacturers Hanover Trust Co.*, 645 F.Supp. 675, 682 (S.D.N.Y.1986), *aff'd*, 820 F.2d 46 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

The requirements are somewhat relaxed where, as here, the plaintiff bases his complaint on an offering memorandum or similar document. The memorandum "satisfies 9(b)'s requirements as to identification of the time, place, and content of the alleged misrepresentation ... Furthermore, no specific connection between fraudulent representations in the Offering Memorandum and particular defendants is necessary where ... defendants are insiders or affiliates participating in the offer of the securities in question." *Luce, supra*, 802 F.2d at 55 (citations omitted).

Although persons such as corporate officials making stock offerings or general partners offering limited partnerships may be considered insiders for the purposes of Rule 9(b), *see DiVittorio v. Equidyne Extractive Industries*, 822 F.2d 1242, 1247–48 (2d Cir.1987) (partners, subsidiaries of the partnership, affiliates, controlling stockholders, officers or directors of partnerships are insiders); *Luce, supra*, 802 F.2d 49 (partners and principals in partnerships are insiders); *Ohman v. Kahn*, 685 F.Supp. 1302 [current] Fed.Sec.L.Rep. (CCH) ¶ 93,740 (S.D.N.Y.1988) (principals of corporation offering shares), it is less clear whether attorneys or accountants may be held under this relaxed standard of pleading, *see DiVittorio, supra*, 822 F.2d at 1249 (lawyers and accountants not held when complaint does not sufficiently allege insider status and when not specifically linked to fraudulent misrepresentation or omission); *The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 394 (S.D.N.Y.1988) (accountant who certified audited balance sheet upon which shareholders equity was based in establishing stock purchase price

was not an insider but was held liable on other grounds); *Cohen v. Goodfriend*, 665 F.Supp. 152, 156–47 (E.D.N.Y.1987) (attorney who prepared offering materials which contain misrepresentations may be held).

Additionally, allegations of fraud in general may not be pleaded on information and belief unless the matters stated are "peculiarly within the opposing party's knowledge." *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974) 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). If that is the case, then the allegations must be "accompanied by a statement of the facts upon which the belief is founded."

### i. Robson

■ Stevens has alleged that Robson, as tax counsel for Equidyne 1980, drafted the offering memo that contained material falsehoods. He attributes each falsehood to Robson expressly, as well as to the Equidyne defendants, states that the defendants knew the statements in the offering memo were false at the time made, and sets forth his reliance on the statements. Where allegations are made on information and belief, Stevens sets forth his basis for the belief.

Robson contends that this does not meet the requirements of Rule 9(b) because it is lacking in detail. Specifically, Robson claims that Stevens failed to aver the time and place of each fraudulent statement and the person who made it (or in the case of an omission, failed to make it).

Robson contends that the amended complaint must fail as against it because one paragraph sets forth that "[d]uring November and December 1980 (and thereafter through and including at least 1982)." It claims (1) that this is not sufficiently specific as to the time frame, (2) that there can be no cause of action with respect to statements made after the sale because there is no reliance and (3) the complaint does not set forth when the offending statements were received.

The question of whether the after-made statements may constitute grounds for a cause of action under section 10(b) will be addressed in the context of defendants'

Rule 12(b)(6) motion. However, the timing of the statements allegedly relied upon is adequately pleaded. Stevens sets forth the various documents in which the offering statements were made, the exact content of the statement, and how he was misled by it. For example, in ¶¶ 33–35 of the amended complaint, Stevens sets forth the benefits projected in the offering memorandum, that defendants, including Robson knew these projections were false when made, the factual basis for this allegation, his reliance on Robson's expertise, and his injury based on the reliance. Since the statements were made in the Offering Memorandum, the relaxed standard of pleading applies with respect to timing. Therefore, the time and place requirement is adequately set forth.

Robson next contends that the amended complaint must fail as to it because it does not attribute specific statements to specific defendants. The question thus becomes whether Robson can be considered an "insider" or "affiliate." Since Robson in drafting the offering memorandum was acting not on its own behalf but on that of the Equidyne defendants, it is not a corporate insider and therefore the relaxed standards of pleading with respect to who said what do not apply. *See DiVittorio, supra,* 822 F.2d at 1249 (tax counsel are not insiders on similar deal).

However, here, unlike *DiVittorio*, Stevens has attributed specific misrepresentations to Robson. Here, a draft Tax Opinion Letter was distributed with the Offering Memorandum as an appendix thereto. Stevens has set forth in his complaint that these statements were issued at the time of closing, that they were false at the time, that Robson knew they were false at the time, and that Stevens relied on them. Robson contends that these allegations must fail because they do not set forth factual detail to support Robson's knowledge of falsehood. Although some factual basis for defendants' state of mind must be alleged, *Beck, supra,* 820 F.2d at 50, Rule 9(b) permits matters of knowledge to be pleaded generally. Thus, what is required in general is that the defendants are given

"fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Shemtob, supra,* 448 F.2d at 444; *see also Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987). Thus, the allegations attributing specific falsehoods to Robson as set forth in the Opinion Letter, setting forth reliance on those falsehoods, and alleging a minimum factual basis for that basis satisfies Rule 9(b). (amended complaint ¶¶ 39–42).

In sum, Stevens has satisfied Rule 9(b) with respect to those allegations pertaining to Robson's Tax Opinion Letter. All other allegations against Robson pursuant to section 10(b) and Rule 10b–5 must fail.

### ii. Shron

■ The reasoning set forth above with respect to Robson is equally applicable to Mark Shron. Since Shron, as accountant, is not an insider but in effect an independent contractor, it cannot be held for general statements in the Offering Memorandum not specifically attributed to it.

Paragraph 36 of the amended complaint, however, specifically sets forth statements issued by Shron in Exhibit B to the Offering Memorandum, namely the Pro Forma Financial Illustrations. In that paragraph, Stevens sets forth the tax benefits Shron represented would accrue, that the statements were false, that Shron knew they were false and the basis for believing as much, and his reliance on the statements in making his purchases. This adequately satisfies Rule 9(b)'s requirement that fraud be pleaded with particularity. Thus, the amended complaint will be sustained as to ¶ 36 under Rule 9(b).

### B. *Failure to State a Claim*

Next, both Robson and Shron have moved to dismiss the section 10(b) claims for failure to state a claim upon which relief may granted under Rule 12(b)(6), Fed.R.Civ.P. In considering a motion to dismiss for failure to state a claim, this court must accept as true all facts in the complaint, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

As this circuit has set forth, "[t]o state a claim under Section 10(b), a complaint must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security." *Luce, supra,* 802 F.2d at 55 (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). "There is no indication that Congress intended anyone to be made liable of such practices unless he acted other than in good faith." *Ernst & Ernst, supra,* 425 U.S. at 206, 96 S.Ct. at 1387.

■ However, no liability attaches to an offering memorandum that purports to be speculative. In *Luce v. Edelstein, supra,* 802 F.2d at 56, the Second Circuit addressed a situation where the defendants had specifically warned against reliance:

> [T]he Offering Memorandum made it quite clear that its projections of potential cash and tax benefits were "necessarily speculative in nature" and that "[n]o assurance [could] be given that these projections [would] be realized." Indeed, the Offering Memorandum warned prospective investors that "[a]ctual results may vary from the predictions and these variations may be material." We are not inclined to impose liability on the basis of statements that clearly "bespeak caution."

*Id.* (quoting Offering Memorandum and *Polin v Conductron Corp.,* 552 F.2d 797, 806 n. 28 (8th Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977)).

■ The Pro Forma statements issued by Shron and referred to in the complaint fall within this purview. Attached to each projection is a cover letter that states:

> You have asked us to use the set of assumptions attached hereto in the presentation of the aforementioned statements. These assumptions were provided solely by you and were not evaluated or audited by us. The presentation of these statements does not imply that we made an examination of them in accord-

ance with generally accepted auditing standards, their sole purpose being to illustrate the results set forth if the set of assumptions were to be achieved. There is no implication or inference, by the accountants, that the results of the Proforma Statements can or will be achieved....

The benefits set forth ... could be significantly affected by adverse determinations by the Internal Revenue Service with respect to the deductibility of certain expenditures and the appropriate periods in which these expenditures may be deductible. Particular attention should be directed to the sections captioned "Risk Factors" and "Summary of Federal Income Tax Consequences."

Accordingly, we are not in a position to express any opinion on the aforementioned statements and do not express any opinion on them or the achievability of the results shown therein.

These statements "bespeak caution" at least as much as those set forth above in *Luce*. Not only do they set forth that they are based on supplied facts, but they additionally state that there is no implication that the results predicted can or will be achieved. Thus, Shron cannot be held liable under section 10(b) and Rule 10b–5, and the claim against it must be dismissed under Rule 12(b)(6).

■ The same cannot be said of Robson. The Opinion Letter for which it can be held primarily liable does contain some warnings. It states that the opinion is based upon facts supplied by Equidyne, that it may have a conflict of interest in that it participated in the drafting of the principal agreements, and that many of the tax aspects of the opinion are based on portions of the Internal Revenue Code that has not yet been interpreted. (Opinion Letter at 1) It also advises getting advice from one's own tax and business advisor. (Opinion letter at 28) However, beyond this, the letter goes on to make detailed tax predictions, and in the conclusion of the letter states:

[I]n our opinion it is more likely than not that the bulk of the tax benefits dis-

cussed in the Confidential Memorandum and this Opinion are allowable under current tax law.

Thus, unlike Shron, which expressly refused to state its opinion, Robson, as tax expert, offered its. Moreover, since Robson did hold itself out to be a tax expert, i.e. giving tax advice not only to potential investors but to the investment vehicle itself, reliance on its opinion is reasonable.

■ However, since section 10(b) and Rule 10b–5 impose liability for fraud in the purchase and sale of securities, no liability attaches to statements made after the transaction. Therefore, Stevens' allegations regarding after-made statements do not state a claim.

■ Thus, a claim has been stated against Robson for statements in the Opinion Letter. Stevens alleged that Robson set forth both misleading facts and false tax consequences in its opinion letter with advance knowledge that material so stated was untrue. (amended complaint ¶¶ 39–40, 44, 47). He stated specifically that Robson knew in advance that the law was contrary to what was stated in the opinion letter, but that it set forth misleading statements to induce the purchase of limited partnerships. This satisfies Rule 12(b)(6).

### C. *Aiding and Abetting*

In addition to alleging principal liability against Robson and Shron under section 10(b), Stevens has alleged that both aided and abetted the Equidyne defendants' commission of securities fraud:

Defendant Robson, which prepared and drafted the aforesaid offering documents, knew or was reckless in not knowing that the aforesaid misrepresentations contained in the Offering Memorandum were untrue and/or omitted to state facts sufficient to make the representations that were made not misleading. Marks Shron knew or was reckless in its disregard for the truth of not knowing the aforesaid material misrepresentations contained in the Offering Memorandum (*see* paragraph 36, *supra*), were untrue and/or omitted to state facts sufficient to make the representa-

tions that were made not misleading. Defendants Robson and Marks Shron affirmatively aided and abetted Equidyne, Equidyne Corp., Equidyne Entities, Beeler, Ross and Liebmann in perpetrating the securities fraud described above which caused plaintiff substantial injuries.

In order to make out a claim for aiding and abetting liability, a plaintiff must allege:

(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;

(2) "knowledge" of this violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *see also Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *Morgan v. Prudential Group, Inc.,* 81 F.R.D. 418, 424 (S.D.N.Y. 1978). "The three requirements cannot be considered in isolation from one another. Satisfaction of the *scienter* requirement will, for example depend on the theory of primary liability and, as will be seen, there may be a nexus between the degree of scienter and the requirement that the alleged aider and abettor render 'substantial assistance.'" *IIT, supra,* 619 F.2d at 922 (emphasis in original). However, each element must be set forth with sufficient particularity to overcome a Rule 9(b) motion. *Morgan, supra.*

In *Morgan v. Prudential Group, Inc., supra,* the plaintiff set forth claims against attorneys and accountants for aiding and abetting a securities violation. Morgan's complaint alleged that the attorneys had "participated in the drafting of the Selling Documents, in particular, with respect to the description and method of selection of

oil and gas properties ..." It alleged that the accountants had "participated in the drafting, preparation and review of the prospectus and, in particular, provided accounting and technical advice in connection with their preparation." *Morgan, supra,* 81 F.R.D. at 425. The Honorable Morris Lasker held that these allegations were "inadequate because they d[id] not state how the 'participation' of these defendants assisted the Prudential Defendants in defrauding investors," but noted that these defendants might be held if the plaintiff had alleged that the defendants "acceded to the inclusion of the false or misleading information in the financial portions of the prospectus for which [they were] directly responsible" or that the defendants "furthered the fraud by not objecting to the inclusion of the information [they] knew to be false or misleading." *Morgan, supra,* 81 F.R.D. at 425.

■ Robson is alleged to have the type of connection to the fraud to which Judge Lasker referred. Although the paragraph set forth above specifically addressing aiding and abetting does not set forth the elements of this charge with the specificity necessary to overcome a Rule 9(b) motion, the remainder of the complaint sets forth numerous examples of primary fraud.[2] Stevens further sets forth that Robson knew, or was reckless in not knowing that the information set forth in the memorandum was false, but that it failed to object to the inclusion of the misleading statements in the document—that is, the tax consequences set forth for which they were responsible. Additionally, Stevens claims that Robson failed to object to or to amend its Opinion Letter when the deal was closed although, it knew at the time that the material set forth was untrue. (amended complaint ¶¶ 39–40).

---

**2.** For example, Stevens sets forth that the Equidyne defendants represented that best efforts would be used to sell limited partnerships and that the deal would not be closed if the partnership was undersubscribed. However, the partnership went to closing in spite of undersubscription and the Equidyne defendants allegedly knew they would do so. Stevens claims to have

relied on this false statement in making his purchase. (amended complaint ¶ 25). Additionally, Stevens claims that the Equidyne defendants knowingly or recklessly misrepresented the amount of coal reserves available for mining, and that he relied on the misrepresentations in making his purchase. (amended complaint ¶ 27).

Additionally, contrary to the defendant's assertions, Stevens has successfully pleaded the scienter requirement. Stevens has alleged that Robson knew or was reckless in not knowing that the information represented was materially misleading. This circuit has held that an allegation of recklessness will satisfy the scienter requirement in pleading aiding and abetting a securities fraud violation if the defendant owes the plaintiff a fiduciary duty. *See IIT, supra,* 619 F.2d at 923. Since the complaint alleges that Robson was acting as Stevens' attorney at the time of closing (amended complaint ¶ 18), Robson owed Stevens such a duty and thus may be held pursuant to this standard.

Robson could be held, however, in the absence of an attorney client relationship with Stevens. "Whether a reckless disregard of the facts is sufficient to satisfy the requirement of knowledge [under all circumstances] has not yet been decided by the Supreme Court." *Armstrong, supra,* 699 F.2d at 91. "However, [courts in this circuit have] concluded that recklessness is sufficient to establish scienter where plaintiffs are third parties whose reliance upon the accountant's audit or opinion letter is reasonably foreseeable." *In re Investors Funding Corporation of New York Securities Litigation,* 523 F.Supp. 533, 558 (S.D.N.Y.1980) (citing *Oleck v. Fischer,* [1979] Fed.Sec.L.Rep. (CCH) ¶ 96,898 (S.D. N.Y.1979) [available on WESTLAW, 1979 WL 1217]). This applies equally to an attorney's opinion letter regarding tax consequences and an attorney's participation in drafting an offering memorandum. See *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1367 (D.Conn.1987); *see also Morgan, supra,* 81 F.R.D. at 425 (as set forth above).

█ Shron is not purported to have had direct involvement with the Offering Memorandum, nor to have issued an opinion letter, but only to have set forth misleading information itself in its Pro Forma Projections. Thus, the only substantial assistance it could have rendered was through its own work product created for appendage to the main offering memorandum as op-

posed to in work bearing the name of the Equidyne defendants. It did not, as Judge Lasker set forth, "Accede[ ] to the inclusion of the false or misleading information," nor did it fail to "object[ ] to the inclusion of the information it knew to be false" as it is not alleged to have participated in the drafting of the Offering Memorandum at all.

Moreover, the nature of Shron's projections are entirely speculative. Since reliance upon such speculative projections is unreasonable, they can hardly be said to "substantially assist" one in perpetrating a fraud.

In sum, Stevens has successfully set forth a claim of aiding and abetting a section 10(b) securities law violation with respect to Robson and that allegation satisfies Rule 9(b) of the Federal Rules of Civil Procedure. The claim is dismissed with respect to Shron.

## II. *Section 17(a)*

█ Count two of the complaint charges Robson and Shron with violations of section 17(a) of the Securities Act of 1933. Section 17(a) provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading, or

(3) to engage in any transportation, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q.

Both Robson and Shron have contested the viability of a private right of action under section 17(a). Thus far the Supreme

Court has issued no definitive ruling on the subject, *see Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975), and the Second Circuit, in contradiction to an earlier statement,[3] has recently stated that the existence of such a right is an open question, *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985) (Friendly, J.); *Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir.1984).

Several courts in this district have refused to imply a private right of action under section 17(a). *See, e.g., Center Savings & Loan Association v. Prudential-Bache Securities, Inc.*, 679 F.Supp. 274, 279 (S.D.N.Y.1987); *Anderson v. Lowrey*, 667 F.Supp. 105, 110 (S.D.N.Y.1987). In a recent opinion, this court agreed. *Bruce v. Martin*, 691 F.Supp. 716, 725–26 (1988). Adopting the holding set forth in *Bruce*, this court holds that Stevens cannot maintain a private right of action under section 17(a). Count two of the complaint is therefore dismissed.

### III. *RICO*

Count Three of the complaint charges Shron with violating the civil provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c) ("RICO"). To state a cause of action under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

Stevens in his complaint charges that Shron violated RICO by preparing fraudulent documents on behalf of Equidyne 1980 and its affiliates, namely tax returns, tax information forecasts and projections, and by providing financial information in documents which materially misrepresented and/or omitted the truth. He thus claims that Shron aided and abetted and participated in the organization, promotion, operation and management of Equidyne 1980, the enterprise, and received income therefrom. Shron has moved to dismiss this claim on the grounds that it is untimely and that it fails to state a RICO claim.

In a recent case, the Supreme Court determined that the statute of limitations applicable to Civil RICO claims was the four year statute as borrowed from the Clayton Act, 15 U.S.C. § 15b. *Agency Holding Corp. v. Malley–Duff & Associates*, — U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). In *Agency Holding Corp.*, the respondent had alleged that the petitioner "acquired Malley–Duff's agency by imposing an impossibly high annual production quota on Malley–Duff nine months into fiscal year 1977 and then terminating the agency when Malley–Duff failed to meet this quota." *Id.*, 107 S.Ct. at 2761. The Court held that "the earliest time Malley–Duff's RICO action could have accrued [was] the date of … termination."

Stevens' complaint does not in its RICO count set forth the dates that the alleged fraudulent documents were disseminated. The Offering Memorandum, appended to which are Shron's projections, is dated November 30, 1980, and the transaction was closed on December 31, 1980. Using these as the dates of the alleged fraudulent inducement renders Stevens' complaint time barred under the four year statute as the complaint was not filed until November 28, 1986.

In his memorandum in opposition to this motion, Stevens asserts that Shron continued to prepare and distribute tax information on behalf of Equidyne 1980 and did so at least until August 1983. He thus claims that the cause of action under RICO did not accrue until that time and has requested leave to amend his complaint to reflect this. However, as Stevens has failed ade-

---

**3.** In *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), the court held that "the language of § 17(a) is broad enough to imply a private right of action."

quately to state a RICO claim, leave to amend will not be granted.

Section 1962(c) declares that it is:

unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or a collection of unlawful debt.

■■■ Stevens has alleged that Shron participated in the affairs of Equidyne 1980, Equidyne, Equidyne Corp. and Equidyne Entities, which constitute an "enterprise" under RICO. He further claims that distribution of fraudulent financial materials to potential investors and investors regarding Equidyne 1980 and other earlier Equidyne investment vehicles constitute a pattern of racketeering activity.

As set forth above, Stevens has failed to state a claim against Shron based on either the Offering Memorandum or the Pro Forma Projections appended thereto. The allegations with respect to those documents do not state a claim of fraud nor has Stevens set forth a claim against Shron for aiding and abetting securities fraud. Thus, these acts cannot form the predicate act basis of a RICO claim. Stevens, therefore, must allege other acts on the part of Shron constituting a pattern of racketeering activity.

In his RICO count Stevens additionally alleges that Shron prepared additional fraudulent financial documents, for example tax returns, that presumably were not relative to the purchase of his interest in Equidyne. He claims that Shron either knew the information contained in those documents was false or that it acted in reckless disregard for the truth. He further alleges that Shron knew or had reason to know that the information it provided would be transmitted over wire or disseminated through the mail constituting mail and wire fraud.

However, when fraud forms the basis of a RICO complaint, that fraud must satisfy the requirements of Rule 9(b). *See Newman v. L.F. Rothschild,* 651 F.Supp. 160, 162 (S.D.N.Y.1986). Stevens has alleged only in the broadest terms that Shron provided investors with false or misleading information in various financial documents. He has not alleged exactly what information was or should have been provided, when or how it was provided, or not or the manner in which they misled investors. *Beck, supra,* 645 F.Supp. at 682. A complaint insufficient to state a cause of action for fraud cannot form the basis of treble damage liability under RICO. Thus, Stevens' civil RICO count is dismissed.

### IV. *Common Law Fraud*

■■■ In setting forth his fourth cause of action for common law fraud, Stevens relies on the allegations in his complaint with respect to the first three causes of action. Shron and Robson have moved to dismiss under Rule 9(b) and for lack of subject matter jurisdiction under Rule 12(b)(1).

Insofar as Stevens' complaint has failed to state a claim against Shron in the first three counts of its complaint, so too must the allegations here fail. However, insofar as it has succeeded in stating a claim for securities fraud against Robson, its claim for common law fraud may be sustained.

Moreover, this court has jurisdiction over Stevens' securities law claims under 28 U.S.C. § 1331. It may thus assert pendent jurisdiction over Stevens' common law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Indeed, as the same acts form the basis for both causes of action, it serves judicial economy to assert jurisdiction.

### *Malpractice Claims*

■■■ Counts Five and Six of Stevens' complaint allege attorney and accountant malpractice. However, these claims must be dismissed as time barred.

Under New York law, the statute of limitations for malpractice claims is three years. New York Civil Practice Law & Rules § 214(6). A cause of action for malpractice accrues at the time of the wrongful acts or omissions. *Gilbert Properties Inc. v. Millstein,* 40 A.D.2d 100, 338 N.Y.S. 2d 370, 371 (1st Dep't 1972), *aff'd,* 33 N.Y.

2d 857, 307 N.E.2d 257, 352 N.Y.S.2d 198 (1973).

Shron's pro forma projections were rendered in November 1980, while Stevens' complaint was filed in November 1986. The complaint would be untimely even if Stevens received his last tax-related communication in August of 1983, as set forth in his *memorandum*. Stevens has alleged no acts on the part of Robson occurring after November 28, 1983. Thus, the malpractice complaints against these defendants must be dismissed.

*Wofsey and Schwarz*

■ Stevens' sole allegation against Wofsey and Schwarz is that they participated in the allegedly worthless exchange of Stevens' interest in Equidyne 1980 for Beeler's interest in Equidyne 1979. Wofsey and Schwarz have moved to dismiss pursuant to Rules 9(b) and 12(b)(6).

The only reference in the complaint to the participation of these defendants is that:

Defendant Schwarz, while acting within the scope of his employment by Wofsey and in the capacity of counsel to Equidyne 1979, joined in the representations made by Ross and Beeler to plaintiff regarding the value of an interest in Equidyne 1979, and made separate and independent representations to plaintiff and his legal representative concerning the same.

(amended complaint ¶ 144). This allegation is wholly devoid of the particularity required by Rule 9(b) as set forth above. The complaint against these defendants is, therefore, dismissed.

*Conclusion*

Robson's motion to dismiss Stevens' Section 10(b) and common law fraud actions against it is denied with respect to its Opinion Letter and the charge of aiding and abetting and is granted in all other respects. Its motion to dismiss Stevens' attorney malpractice claim is granted. Shron's, Wofsey's and Schwarz' motions to dismiss are granted in all respects.

Stevens is granted thirty days leave to amend his complaint with respect to those claims dismissed for failure to plead fraud with particularity. All discovery will be completed by October 26 and the pretrial order filed November 11, 1988.

It is so ordered.