Simeon MORIN, et al., Plaintiffs,

v.

Barry H. TRUPIN, et al., Defendants.

Norman E. GAAR, Plaintiff,

v.

Barry H. TRUPIN, et al., Defendants.

Michael P. ALBERTI, M.D.,
et al., Plaintiffs,

v.

Barry E. TRUPIN, et al., Defendants.

Nos. 88 Civ. 5743 (RWS), 89 Civ. 6639
(RWS), 90 Civ. 3475 (RWS).

United States District Court,
S.D. New York.

June 2, 1993.

Fink Weinberger, P.C., New York City by Neal A. DeYoung, Farrell C. Glasser, of counsel, for plaintiffs.

McDonough Marcus Cohn & Tretter, P.C., New York City by Diane K. Kanca, Eugene H. Goldberg, of counsel, for defendant Stuart Becker & Co.

.Eaton & Van Winkle, New York City by Michele C. Petitt, of counsel, for defendants Continental Realty Corp. and Emanuel Organek.

## OPINION

SWEET, District Judge.

Defendants Emmanuel Organek ("Organek"), President of Continental Realty ("Continental"), and Stuart Becker and Stuart Becker, P.C., (collectively "the Becker Defendants" or "Becker"), have moved to reargue this Court's determination that the Plaintiffs in the *Morin* and in the *Alberti* actions had adequately pled securities and common law fraud against them. For the reasons given below, Organek's motion to reargue is granted and Becker's motion to reargue is denied. Upon reconsideration, Organek's motion to dismiss the securities fraud claims against him is granted, and for lack of pendent jurisdiction, the state law claims are dismissed as well.

### The Parties

The *Alberti* Plaintiffs are investors in a New York limited partnership known as the Sacramento Office Park Associates ("Sacramento Associates"), organized to own, operate and lease a two-building office park complex in Sacramento, California referred to as the Butano Buildings (the "Butano Property"). The Plaintiffs allege they purchased their limited partnership interests from November 1984 through the spring of 1985 in reliance upon allegedly misleading offering materials, especially a private placement memoranda (the "Sacramento PPM"). The *Morin* plaintiffs are investors in other real estate limited partnerships, referred to as the 118, 119, 119M, 130 and 218 syndications, formed to divide up and offer to the public interests in three office buildings located in Sarasota, Florida, Grand Rapids, Michigan, Dallas, Texas, and in warehouses in Indianapolis, Indiana. Apart from the manner in which interlocking interests in the four properties were distributed among the different limited partnerships, the *Morin* plaintiffs alleged that the syndications were structured in precisely the same way as the Sacramento offering in *Alberti*. Certain of the *Morin*

plaintiffs also invested in tax shelters which leased helicopters, the Airjet Trusts.

Barry H. Trupin ("Trupin") is alleged to be the founder and controlling person of several interconnected companies and partnerships (the "Rothschild Group") which offered all of these interests to accredited investors. Trupin is also alleged to have controlled North American Associates ("North American"), a New York limited partnership which was represented by Trupin to be unaffiliated with the Rothschild Group. Defendant Gerald Schaeffer ("Schaeffer") was President of two of these companies, Rothschild Reserve International, Inc. ("Rothschild Reserve") and Prudential American Realty Corp. The Plaintiffs allege that the Sacramento PPM revealed neither that Trupin was behind these limited partnership offerings nor that other Trupin tax shelters had been routinely disallowed by the I.R.S.

Mintz, Fraade & Zeigler, P.C. (the "Mintz Fraade Defendants" or "Mintz, Fraade") is a New York law firm which is alleged to have acted as counsel to both entities in the Rothschild Group and North American, to have provided tax opinions and tax information in private placement memoranda prepared for these offerings, and to have represented Trupin in partnership audit proceedings before the I.R.S.

Organek is the principal and sole owner of Continental Realty Corp., a New York corporation which "packages" real estate purchases for other interests.

Stuart Becker & Co. is a New York accounting firm which prepared financial information and rosy financial projections about the Butano Property for inclusion in the Sacramento PPM. It also prepared the audited financial statements of the Sacramento Associates for the year ending December 31, 1984.

### Prior Proceedings

The underlying disputes and principal parties which are the subject of these actions are recounted in prior opinions of the court, familiarity with which is assumed. *See, e.g., Morin v. Trupin,* 711 F.Supp. 97 (S.D.N.Y. 1989); *Morin v. Trupin,* 738 F.Supp. 98 (S.D.N.Y.1990); *Morin v. Trupin,* 747

F.Supp. 1051 (S.D.N.Y.1990); *Morin v. Trupin,* 778 F.Supp. 711 (S.D.N.Y.1991); and *Morin v. Trupin,* 799 F.Supp. 342 (S.D.N.Y. 1992).

The most recent opinion of this Court in the *Morin/Alberti* actions was the opinion dated January 6, 1993, which reinstated the Plaintiff's claims against the Becker Defendants, the Mintz, Fraade Defendants, and Organek and Continental Realty by permitting the Plaintiffs to plead a third amended complaint in the *Alberti* and in the *Morin* actions (the "Complaints"). 809 F.Supp. 1081 (1993). The Plaintiffs' original pleadings against Organek and Continental had been dismissed for insufficient particularity in this Court's opinion dated September 29, 1990 (*Morin v. Trupin,* 747 F.Supp. 1051 (S.D.N.Y.1990)), and claims against these defendants were not repleaded until the Plaintiffs filed the new Complaints.

The third amended Complaint in *Alberti,* apart from certain generalized allegations of fraud which were not pled with sufficient particularity under Rule 9(b), alleges that Organek, who was not licensed as a real estate broker in California, had been paid a $750,000 brokerage fee out of the proceeds of the offering of limited partnership interests in the Butano Property in Sacramento Associates syndicated by Trupin. The Plaintiffs allege that this "brokerage fee," listed as such in the Sacramento PPM, was fraudulent because the underlying transaction never happened, and that all brokerage services contributing to Sacramento Associates' purchase of the Butano Property were performed by the Sacramento office of Caldwell Banker, which was paid a true brokerage fee of four percent of the $10,500,000.00 gross sale price or $420,000.00.

According to the Sacramento PPM, a Trupin-controlled entity, Sacramento Realty Corporation (SCR), purchased the property by paying cash, assuming the first mortgage, and taking out a second mortgage owed to the seller and that SCR paid Continental a brokerage fee of $750,000 for its services. SCR then sold the Butano property to an unaffiliated partnership, listed in the Sacramento PPM as North American, which assumed the obligations owed under both mort-

gages. North American then sold the property to Sacramento Associates, leaving a wrap-around mortgage owed to North American such that all tax deductions for the mortgages on the Butano Property would flow through to the limited partners on a *pro rata* basis.

The Plaintiffs essentially allege that these transactions as described in the Sacramento PPM never happened because the initial purchase price of the Butano Property was $10,-500,000, not $12,900,000 as represented in the Sacramento PPM, and the building was appraised in 1988 in connection with bankruptcy proceedings and valued at $6,870,000; North American was a shell corporation; the title documents indicate that Sacramento Associates took title directly from the original seller, and neither SCR nor North American was ever involved in any sale of the Butano Property. Since the wrap-around note did not represent a genuine obligation to North American, the interest (which accrued at an annual rate of 18%) was not deductible and that the inflated acquisition price would not support the depreciation deductions also promised to investors. The Plaintiffs have also alleged that since neither Organek nor his company Continental was ever licensed as a real estate broker in California, any brokerage fee paid to him would have been illegal.

## Discussion

### Standards for Reargument

■ A moving party is entitled to reargument under Local Rule 3(j) if it demonstrated that the Court overlooked controlling decisions or material factual matters which were before the Court on the underlying motion. *Swan Brewery Co. v. United States Trust Co.*, 145 F.R.D. 40 (S.D.N.Y.1992); *Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n.*, 624 F.Supp. 856, 857 (S.D.N.Y. 1985). The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided, *Morgan Guaranty Trust Co. v. Garrett Corp.*, 625 F.Supp. 752, 756 (S.D.N.Y.1986), but to correct mistakes made because relevant information was disregarded.

## Organek

■ The prior opinion found that the Plaintiffs had pled specific connections between the professional defendants and misleading statements in the Sacramento PPM, *Morin*, 809 F.Supp. at 1087. However, the Court overlooked facts which demonstrated that Organek and Continental should not have been grouped with the other professional defendants. Although the Becker Defendants were linked to financial projections and the Mintz, Fraade Defendants were linked to a tax opinion included in the Sacramento PPM, the Plaintiffs did not allege facts to establish that Organek was responsible for any particular statements in the Sacramento PPM in the same way the other professional defendants were.

The Plaintiffs have alleged that Organek was an insider generally responsible for the Sacramento PPM. Since the question of whether Organek, who at all times was president of his own company, was actually an insider in the Trupin organization was overlooked in the prior opinion, Organek's arguments, based on the contention that he *cannot* be considered an insider, should be reconsidered. Accordingly, Organek and Continental's motion to reargue is granted, and the question is considered below.

### Primary Liability

■ The Plaintiffs' allegations of securities fraud against Organek and Continental must meet the particularity requirements of Rule 9(b), F.R.Civ.P. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Plaintiffs must state precisely what material misstatements were made, the time and place of each misstatement, the speaker, the content, the manner in which the statement was misleading, and what the defendants "obtained" as a result of the fraud. *Beck v. Manufacturers Hanover Trust Co.*, 645 F.Supp. 675, 682 (S.D.N.Y.1986), *aff'd*, 820 F.2d 46 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d

Cir.1987); *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978). Scienter need not be pled with great specificity, but must be supported by facts giving rise to "strong inference" of fraudulent intent. *Ouaknine,* 897 F.2d at 80; *Beck,* 820 F.2d at 50; *Connecticut Nat. Bank v. Fluor,* 808 F.2d 957, 962 (2d Cir.1987). While it is true that "no specific connection between fraudulent representations in the Offering Memorandum and particular defendants is necessary where ... defendants are insiders or affiliates participating the offer of the securities in question," *DiVittorio,* 822 F.2d at 1245–47, quoting *Luce,* 802 F.2d at 55; *O'Brien v. National Property Analysist Partners,* 719 F.Supp. 222, 227 (S.D.N.Y.1989), *aff'd,* 936 F.2d 674 (2d Cir.1991); *Stevens v. Equidyne,* 694 F.Supp. 1057 (S.D.N.Y.1988), this relaxed standard of pleading does not mean no pleading at all. The complaint must still establish a sufficient nexus between an individual defendant and the nondisclosures or omission in the private placement memorandum, *Ouaknine,* 897 F.2d at 80.

■■ The question is whether the Plaintiffs have adequately plead Organek's status as an "insider" or "affiliate." *Stevens,* 694 F.Supp. at 1062. Corporate officials making stock offerings general partners offering limited partnerships, and principals in general may be considered insiders for the purposes of Rule 9(b). *Stevens,* 694 F.Supp. at 1061, citing *DiVittorio,* 822 F.2d at 1247–48; *Luce,* 802 F.2d at 49; *Ohman v. Kahn,* 685 F.Supp. 1302 (S.D.N.Y.1988). Independent contractors, such as lawyers and accountants, are generally not considered insiders absent specific allegations of insider status. *Stevens,* 694 F.Supp. at 1061; *DiVittorio,* 822 F.2d at 1249.

■ Organek was an independent contractor, not an employee of the Trupin organization; he was president of his own company and maintained his own real estate business. However, taking the Plaintiffs' allegations as true, Organek was employed by the Trupin organization. The Plaintiffs allege that Organek and Continental acquired properties in eighteen of the partnerships syndicated by Trupin, arranged financing for and managed the properties, and supplied the information about the properties themselves which was included in the private placement memoranda. Organek and Continental are alleged to have served as general partners of a number of prior Rothschild Group real estate syndications structured in precisely the same way as the partnerships at issue in *Alberti* and in *Morin,* and to have conferred with Schaeffer, President of Rothschild Realty, on the disclosures contained in the Private Placement Memoranda.

The Plaintiffs have not alleged that Continental was a shell corporation or alter ego of one of the Rothschild Group entities, and under these circumstances the corporate form must be respected. "Basic principles of corporate law presume that absent a rather egregious disregard of corporate formalities, one corporate entity or individual without substantial interests in the corporation is not automatically or readily responsible for the acts of another entity," *The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1044 (S.D.N.Y.1986).

The Plaintiffs have presented no evidence that Organek actually knew, or culpably refused to see, how the fees were being characterized in the Sacramento PPM. Without providing more to demonstrate Organek's "insider" status, his inaction will not make him liable. Organek is therefore even less likely to be an insider by virtue of his position than a former defendant dismissed earlier in this action, Robert Abrams, who served as in-house counsel to entities in the Rothschild Group. *See Morin v. Trupin,* 778 F.Supp. 711, 717 (S.D.N.Y.1991).

In the *Alberti* Third Amended Complaint, unlike the complaint which was dismissed against Abrams, the Plaintiffs do allege that Organek participated in the day-to-day operations of Sacramento Associates. However, as this Court observed earlier, these general allegations against Organek are insufficient to survive Rule 9(b). The specific allegation involving the brokerage fee does not tie this misrepresentation to Organek absent any specific evidence that Organek had any control over the Sacramento PPM or over other representations made to the Plaintiffs.

### Aiding & Abetting Liability

For the same reason, the Opinion was in error when it stated that the Plaintiffs had made out a case of aiding and abetting liability on the part of Organek. Aiding and abetting liability requires an underlying instance of securities fraud, knowledge of that fraud, and either actual aid or silence designed intentionally to aid the primary fraud. *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983). Aiding and abetting a fraud—like fraud itself—must be pleaded with particularity. *Id.* at 92–93. Since Organek had no control over the offering materials alleged to have misled the investors, nothing which he did could have helped the particular fraud of nondisclosure, regardless of how much his expertise enabled the Rothschild Group entities to acquire real estate.

It is important to note, in this context, that the fraud in question is the nondisclosure of Trupin's control over North American and the inflation of the price of the building through a non-existent sale, facts which would have alerted an investor to potential problems with the mortgage deductions and other tax benefits offered by the Sacramento PPM as well as raising real questions about the valuation of the property. Organek is merely alleged to have "known" about this, based on his steady involvement with the Trupin organization. The Plaintiffs have not pled that the information about the real estate provided by Organek to Trupin and Mintz, Fraade was false; in fact, the Plaintiffs allege that Mintz, Fraade received true information about the building which the law firm then ignored in preparing its tax opinion. (*Alberti* Complaint ¶ 175). There are no allegations that Organek had a hand in drafting the documents which contained the misinformation, *see Polycast Technology Corp. .v. Uniroyal Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 94,005, 1988 WL 96586 (S.D.N.Y. 1988) (vague allegations that professional defendants "planned and executed" the transaction insufficient without allegations that defendants drafted documents containing misrepresentations). The Plaintiffs have pleaded no actions on the part of Organek which contributed to the misrepresentations in the Sacramento PPM *per se*.

Organek's failure to disclose the misrepresentations to the Plaintiffs can only result in liability if the Plaintiffs can allege that Organek had a duty to disclose, which they have not done.

The Plaintiffs have not alleged any direct dealings with Organek, thus rendering the first ground inapplicable, nor have they successfully alleged a duty to disclose based on a fiduciary relationship: regardless of whether Organek was licensed as a broker or not, his actions as a broker do not give rise to a fiduciary duty. *See Connolly v. Havens*, 763 F.Supp. 6, 10–11 (S.D.N.Y.1991) (clearinghouse broker does not owe a fiduciary duty); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 207 (2d Cir.1989) (surety owes no fiduciary duty to third party). The Plaintiffs have still failed to adduce any evidence suggesting that Organek occupied a position which would create a duty of disclosure to the plaintiffs. *Morin*, 747 F.Supp. at 1071.

### RICO Claims

The RICO claims against Organek based on securities fraud and on his "knowing receipt" of the fraudulent brokerage fee must also be dismissed absent any connection between Organek and the manner in which money paid to him was characterized in the Sacramento PPM. The Plaintiffs have presented no evidence besides the fee to indicate how Organek was paid and why, even if this amount could not be a true brokerage fee, it could not be a finder's fee or the price paid for other services rendered in connection with the acquisition of the real estate. For this reason, claims based on 18 U.S.C. § 1962(a) & (b) must be dismissed.

Although the Plaintiffs have alleged that Organek performed extensive services for the Trupin organization, they have not alleged that Trupin characterized any payments to Organek as brokerage fees for nonexistent transactions, merely that Trupin stated to the Plaintiffs that Organek was paid such a fee. Since the Plaintiffs have not alleged any facts supporting an inference that Organek agreed to any of the predicate acts or knew his fee was a receipt of racketeering income, the Plaintiffs' claims based

on 18 U.S.C. § 1962(d) must also be dismissed.

▇ Since Organek was an independent contractor who did not participate in the operation or management of the Trupin organization, the Supreme Court's recent decision in *Reves v. Ernst. & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) compels the dismissal of all RICO claims based on a violation of 18 U.S.C. § 1963(c). In *Reves,* the Court held that according to the language of 1963(c), under which a RICO defendant must "conduct or participate" in the enterprise, an outside defendant with no official position in the organization will only be liable if he or she is associated with and participates in the operation or management of the Trupin partnerships. *Reves,* —— U.S. ——, ——, 113 S.Ct. 1163, 1166, 1172, 122 L.Ed.2d 525. Conclusory allegations that Organek "acted as an employee" do not suffice to meet this test, for the Plaintiffs must allege that Organek participated in the operation and management of the Rico enterprise. Organek and Continental have not been alleged to be general partners in any of the partnerships in either case, nor have they alleged that the services which Organek performed rise to the level of "operation or management" as that test is defined in *Reves.* In any event, the plaintiffs' claims under Section 1963(c) must fail absent adequate pleadings of predicate acts on the part of either Organek or Continental.

### State Law Claims Against Organek

▇ The dismissal of the securities fraud claims against Organek leaves only the state law claims, which must be dismissed for lack of pendent party jurisdiction. Absent these federal claims, the court no longer has subject-matter jurisdiction over Organek and Continental Realty; *see Zaloom v. Trupin,* Fed.Sec.L.Rep. (CCH) ¶ 97,020 1992 WL 279365 (S.D.N.Y.1992); *The Limited,* 645 F.Supp. at 1046. The statute codifying the doctrines of ancillary and pendent jurisdiction into "supplemental jurisdiction" became effective only on or after December 1, 1990. Since the *Alberti* action was filed May 22, 1990, and the *Morin* action was filed in 1988, both cases are governed by *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). According to the Second Circuit, after *Finley,* "the continued viability of the doctrine of pendent party jurisdiction in any context is seriously in question," *Roco Carriers, Ltd. v. M/V. Nurnberg Exp.,* 899 F.2d 1292, 1295 (2d Cir.1990); *Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 643 n. 5 (2d Cir.1989). *See Griffin v. McNiff,* 744 F.Supp. 1237 (S.D.N.Y.1990) (requesting parties to brief issue of pendent party jurisdiction in tax shelter limited partnership case), *later proceeding,* 1990 WL 106970, 1990 U.S.Dist. Lexis 9088 (S.D.N.Y. July 18, 1990) (pendent party jurisdiction unavailable under *Finley* ).

### The Becker Defendants

The Becker Defendants' motion to reargue is denied, for the Becker Defendants have not shown any factual matter which this court overlooked in the opinion dated January 6, 1993. The Becker Defendants also allege that this Court failed to determine how the Becker defendants could have known the data they reported on was fraudulent. Since the Plaintiffs allege that the Becker Defendants' projections would be false if the Becker Defendants had understood that the syndication's tax deductions would be disallowed, the issue is whether the Becker Defendants knew of the potential tax problems.

▇ Previous opinions of this Court dismissed the claims against the Becker Defendants on the grounds that the Plaintiffs had not pleaded facts from which it could be inferred that the accountants knew of any potential tax problems with the syndications. This was corrected in the third amended Complaints in *Morin* and in *Alberti.* As the Becker Defendants point out, it is well settled that an inference of fraud does not arise from the mere fact that an auditor reported on allegedly inaccurate data. *O'Brien,* 719 F.Supp. at 228; *The Limited Inc. v. McCrory Corp.,* 683 F.Supp. 387, 394 (S.D.N.Y.1988); *Dannenberg v. Dorison,* 603 F.Supp. 1238, 1241 (S.D.N.Y.1985). However if a plaintiff can plead facts showing that an outside defendant who owes no fiduciary duty to the plaintiff, such as an accountant or a surety, was aware of the misstatements in the PPM, that raises a factual issue. The problem

comes from *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 202 (2d Cir.1989):

> In the course of ensuing discovery.... [it was] established that ... a vice president of National Union responsible for computer equipment leasing bonds attended a seminar on equipment leasing limited partnerships ... at which [he] received a memorandum which stated that another such Trupin partnership presented "a very aggressive structure with attendant risks.".... We agree with the district court's carefully phrased assessment that the Turturs "have barely raised a factual issue" in that respect.

*Id.* at 202, 206.

█ In the third amended Complaint in *Alberti*, the Plaintiffs plead that Becker employed Jeffrey Zukoff ("Zukoff") an accountant who had previously been employed by Cornick Garber & Sandler to prepare projections for Rothschild Group private placement memoranda which disclosed I.R.S. audits of those earlier offerings, and whom, the Plaintiffs aver, was fully aware of the sham nature of the sale to North American. The presence of an employee who is aware of earlier tax problems in partnerships organized by Trupin is simply too close to the facts in *Turtur* to permit dismissal of the Becker defendants before trial. The Becker defendants claim that Zukoff was not employed by Becker at the time of the Sacramento Offering. However, what Zukoff knew, when he knew it, and whether he was working for Becker at the time are all disputed issues of fact, and therefore this does not permit dismissal. Because this factual matter was not overlooked in the Court's prior opinion, the Becker Defendants' motion to reargue is denied.

### Conclusion

For the reasons given above, Organek and Continental's motion to reargue is granted, and upon reargument, the claims against them are dismissed. The Becker Defendants' motion to reargue is denied.

It is so ordered.