Hal PAHMER, et al., Plaintiffs,

v.

Bruce GREENBERG, David Greenberg, Norman Nick, Stephen Cantor, Marvin Greenfield, Bernard Teitelbaum, C & G Ventures, Inc., Video USA Associates—1, Limited Partnership, Video USA Associates—1(b), Limited Partnership, Video USA Associates—2(a), Limited Partnership, Video USA Associates—2(b), Limited Partnership, Video USA Associates—2(c), Limited Partnership, Video USA Associates—2(d), Limited Partnership, Video USA Associates—4, Limited Partnership, Video USA Associates, Inc.—# 1, Video USA Associates, Inc.—# 2, Video USA Associates, Inc.—# 4, Video USA Ltd., Video USA International Corp., Mast Capital Investors, Ltd., Touche Ross and Co., Deloitte & Touche, Martin Cianciaruso, Alan Friedman, Jerry Cohen, Ruffa & Hanover, P.C. and Samuel Konigsberg, Defendants.

No. CV 89–4279 (RJD).

United States District Court, E.D. New York.

May 9, 1996.

Stephen Powers, Fink Weinberger, New York City, for Plaintiffs.

Richard Goldstein, Shea & Gould, New York City, for Defendants Touche Ross, Alan Friedman, and Jerry Cohen.

Peter Kurshan, Herzfeld & Rubin, New York City, for Defendants Marvin Greenfield, Norman Nick, Mast Capital Investors, Ltd., Video USA Associates Inc., #1, Video USA Associates Inc., #2.

Glenn Backer, New York City, for Defendants Video USA Associates—1, Video USA Associates—1(b), Limited Partnership, Video USA Associates—2(a), Limited Partnership, Video USA—2(b), Limited Partnership, Video USA Associates USA—2(c), Limited Partnership, Video USA—2(d), Limited Partnership, Video USA—4, Limited Partnership.

Michael Berger, New York City, for Defendant Video USA Associates Inc., #4.

Kenneth Sussmane, Konigsberg, Sussmane & Zapfel, New York City, for Defendants Ruffa & Hanover and Samuel Konigsberg.

## MEMORANDUM & ORDER

DEARIE, District Judge.

■ Plaintiffs, 116 limited partners who together invested approximately $13 million in seven limited partnerships, bring this action against the limited partnerships and the principals, promoters, employees, and retained professionals of the limited partnerships, alleging that defendants failed to disclose material facts, made material misrepresentations, committed a series of fraudulent activities, and engaged in a pattern of racketeering activity. In essence, plaintiffs allege that they were fraudulently induced to invest in the limited partnerships by three misleading private placement memoranda (the "Offering Memoranda") that included as exhibits financial projections prepared by accountants and proposed tax opinions prepared by lawyers.[1] Plaintiffs bring this action for violations of section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), Rule 10b–5 promulgated thereunder, section 12(2) of the Securities Act of 1933 ("1933 Act"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Martin Act. In addition, plaintiffs assert claims based on the common law of fraud, negligence, breach of fiduciary duty, and legal malpractice. Plain-

---

**1.** Plaintiffs argue that the Offering Memoranda cannot be considered in this motion to dismiss because they were not attached to the complaint. Given that defendant's move to dismiss the complaint under Rule 9(b) for failure to plead fraud with sufficient particularity, it is ironic that plaintiffs contend that the Court cannot consider the Offering Memoranda that form the basis of a substantial part of their cause of action. The Offering Memoranda are documents that were required to be filed with the Securities and Exchange Commission, *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–74 (2d Cir.1991), are "integral to plaintiffs' claims," *Field v. Trump*, 850 F.2d 938, 949 (2d Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989), and are referred to extensively in the complaint. Complaint ¶¶ 162, 163, 246, 247, 248, 249, 254, 271, 273, 274, 285. Because the Offering Memoranda were incorporated by reference into the complaint, the materials will be considered for the purposes of this motion to dismiss. *See Furman v. Sherwood*, 833 F.Supp. 408, 411 (S.D.N.Y.1993) (recognizing that "the Second Circuit has expanded the breadth of matters to be considered in deciding motions at the pleading stage of litigation to include documents publicly filed with the SEC and those documents upon which plaintiff relied on in framing their complaint").

tiffs seek rescission, injunctive relief, and damages.

Defendants move to dismiss the amended complaint ("the complaint") on various grounds. The Primary Defendants (the Principals, the Limited Partnerships, the General Partners, the Managing Companies, and C & G Ventures) move to dismiss the section 10(b) and RICO claims under Rules 9(b) and 12(b)(6), to dismiss the RICO claims and the section 12(2) claim as time-barred, to dismiss the Martin Act claim for lack of a private cause of action, to dismiss the negligent misrepresentation and breach of fiduciary duty claims under Rule 9(b), and to dismiss the state law claims for lack of pendent jurisdiction. The Accountant Defendants (Touche Ross & Co., its successor in interest, Deloitte & Touche, and Touche Ross employees Alan Friedman and Jerry Cohen) move to dismiss the section 10(b) and RICO claims as time-barred, to dismiss the section 10(b) and RICO claims under Rules 9(b) and 12(b)(6), to dismiss the section 12(2) claim as time-barred, and to dismiss the state law claims for lack of pendent jurisdiction. Mast Capital moves to dismiss the section 10(b) and RICO claims under Rules 9(b) and 12(b)(6), to dismiss the RICO and section 12(2) claims as time-barred, and to dismiss the state law claims for lack of pendent jurisdiction. The Attorney Defendants (Ruffa & Hanover and Samuel Konigsberg) have not moved to dismiss the complaint.

With respect to the Primary Defendants, the Court declines to dismiss the section 10(b) claims, dismisses the section 1962(d) RICO claim for failure to state a claim, dismisses the section 12(2) claim as time-barred, dismisses the Martin Act claim for lack of a private cause of action, and retains pendent jurisdiction over the remaining state law claims. With respect to the Accountant Defendants and Mast Capital, the Court dismisses the complaint in its entirety. Plaintiffs' request to amend the complaint is granted in part and denied in part.

## BACKGROUND

The complaint essentially alleges that defendants made material misrepresentations and omissions in connection with the sale of limited partnership interests, including the failure to disclose that David Greenberg, a convicted felon, was intimately involved in the offering of the limited partnership interests. The complaint goes on to allege that defendants installed themselves in salaried positions in various entities affiliated with the limited partnerships, misappropriated funds belonging to the limited partnerships, committed a series of insurance frauds, and concealed their fraudulent activities from plaintiffs. The Court notes the prolixity of the complaint and finds that the relatively straightforward fraudulent conduct that forms the basis of plaintiffs' allegations in no way justifies the 99–page, 14–cause–of–action, 307–paragraph complaint cluttered with boilerplate legalese.[2]

Because this is a motion to dismiss, the Court accepts as true all of the allegations in plaintiffs' complaint and draws all inferences in plaintiffs' favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Defendants Bruce and David Greenberg, Norman Nick, Ste-

---

2. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In addition, Rule 8(e)(1) provides that "[e]ach averment of a pleading shall be simple, concise, and direct." Courts have dismissed complaints with prejudice for failure to comply with Rule 8's requirements. *See Michaelis v. Nebraska State Bar Ass'n,* 717 F.2d 437, 439 (8th Cir.1983) (affirming dismissal with prejudice under Rule 8 of a needlessly lengthy complaint); *Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 675 (9th Cir.1981) (affirming dismissal with prejudice under Rule 8 of plaintiff's verbose, confusing, poorly-drafted complaint).

The fact that plaintiffs assert five RICO claims does not justify their verbose complaint. *See Vicom, Inc. v. Harbridge Merchant Services, Inc.,*

20 F.3d 771, 776 (7th Cir.1994) ("[A]lthough RICO complaints often might need to be somewhat longer than many complaints, RICO complaints must meet the requirements of Rule 8(a)(2) and Rule 8(e)(1).") (citations omitted); *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990) (holding in a RICO case that Rule 9(b)'s particularity requirement "must be read together with [R]ule 8(a)") (citations omitted).

Although defendants have not moved to dismiss plaintiffs' complaint under Rule 8, the Court notes that dismissal of the complaint under Rule 8 might be warranted. The Court, however, declines to dismiss the complaint under Rule 8 and will consider defendants' substantive motions to dismiss.

phen Cantor and Marvin Greenfield (the "Principals" or "Principal Defendants") established seven limited partnerships, the stated purpose of which was to operate 92 video retail and rental outlets.[3] The Principals created various corporations, Video USA Associates, Inc.—# 1, Video USA Associates, Inc.—# 2, and Video USA Associates, Inc.—# 4 (the "General Partners"), to serve as general partners of the Limited Partnerships. In addition, the Principals created Video USA Ltd. and Video USA International Corp (collectively the "Managing Companies") to manage and operate the 92 Video USA stores. Defendant Bernard Teitelbaum was the office manager of Video USA Ltd., and defendant Martin Cianciaruso was its internal comptroller after April 1986.[4]

According to the complaint, the Principals, in offering the sale of interests in the Limited Partnerships, created and distributed three misleading private placement Offering Memoranda.[5] Specifically, the Offering Memoranda failed to disclose that defendant David Greenberg, a convicted felon, was intimately involved in the offering of the Limited Partnership interests and in the planning and operation of the purported video retail chain. According to the complaint, David Greenberg was convicted of mail fraud and obstruction of justice in 1978. Moreover, although the Offering Memoranda identified D.A.G. Enterprises, Inc. as a shareholder of Video USA, Ltd., they did not disclose the fact that Adam Greenberg, the sole director, officer and shareholder of D.A.G. Enterprises, Inc., was David Greenberg's twelve-year-old son. Had these material facts been included in the Offering Memoranda, plaintiffs allege that they would not have invested in the Limited Partnerships.

The Principals were aided in the offer and sale of the Limited Partnerships interests by their broker/dealer, Mast Capital Investors, Ltd. ("Mast Capital"), who helped to prepare the three Offering Memoranda, and by their attorneys, the law firm of Ruffa & Hanover, P.C. and attorney Samuel Konigsberg ("Ruffa & Hanover"), who helped to prepare and review the Offering Memoranda and provided legal and tax advice to the Principals, General Partners, Managing Companies, Limited Partnerships, and Mast Capital.

The complaint alleges that Touche Ross, Cianciaruso, Cohen, and Friedland (collectively "Touche Ross") provided accounting, auditing, financial analysis and other non-auditing services to defendants in the preparation of the Offering Memoranda and accompanying exhibits. Cianciaruso, Cohen, and Friedman were certified public accountants employed by Touche Ross from 1984 until 1986. Complaint, ¶ 245. As a result of performing these services for defendants, the complaint alleges that Touche Ross became intimately familiar with the operations of Video USA, Ltd. and the other related entities. Specifically, plaintiffs allege that Touche Ross allowed the Principals to represent in the Offering Memoranda that Touche Ross had prepared the financial projections, had been retained to oversee internal controls and would conduct annual audits of the Limited Partnerships. Complaint ¶ 247. Plaintiffs allege that the Accountant Defendants "performed financial projections ... with the knowledge and intent ... that prospective purchasers of the limited partnership interests would rely on it." Complaint, ¶ 248. The Accountant Defendants failed to disclose material facts to plaintiffs, including, *inter alia*, the involvement of David Greenberg, defendants' misappropriations, self-dealing, insurance frauds and other wrongful conduct. Complaint ¶ 251–253. The Accoun-

---

3. The limited partnerships are defendants Video USA Associates—1, Limited Partnership, Video USA Associates—1(b), Limited Partnership, Video USA Associates—2(a), Limited Partnership, Video USA Associates—2(b), Limited Partnership, Video USA Associates—2(c), Limited Partnership, Video USA Associates—2(d), Limited Partnership, and Video USA Associates—4, Limited Partnership, (collectively the "Limited Partnerships").

4. Before joining Video USA Ltd. in April 1986, Cianciaruso was employed by Touche Ross. Complaint, ¶ 149.

5. The first offering memorandum was dated November 23, 1984. Complaint ¶ 159. Although the complaint does not state the date of the second offering memorandum, the exhibits establish that it was dated June 12, 1985. The third one was dated April 7, 1986. Complaint, ¶¶ 160, 161.

tant Defendants also aided and abetted defendants in their fraudulent activities. Complaint, ¶ 254–255.

Finally, the complaint alleges that the Principals were also aided in this fraudulent scheme by C & G Ventures, Inc. Principal Defendants Bruce and David Greenberg were shareholders of C & G and Principal Defendant Steve Cantor was its president. C & G was itself a shareholder of Video USA, Ltd.

After creating the General Partners and Managing Companies, the Principals installed themselves as officers and directors of those corporations and paid themselves preferential allocations in the form of purported management fees, start-up fees, broker fees, and commissions. The Principals misappropriated the funds of the Limited Partnerships, engaging repeatedly in acts of self-dealing, mismanagement, and waste. Among other things, the Principals put "phony" employees on the payroll and, through their managing company Video USA Ltd., submitted invoices to the Limited Partnerships that overstated the price paid for pre-recorded tapes and then retained the difference.

In 1989, defendants David Greenberg, Bruce Greenberg, Samuel Konigsberg, and Bernard Teitelbaum allegedly submitted four false insurance claims for a total of $1.3 million. These defendants then sought to conceal their insurance frauds by falsifying business records, tampering with and intimidating witnesses, and otherwise obstructing justice. In the summer of 1989, these fraudulent schemes came to light when newspapers reported the arrest and subsequent indictment of David Greenberg, Bruce Greenberg, Samuel Konigsberg, and Bernard Teitelbaum on charges of insurance fraud.

In an attempt to discourage plaintiffs from pursuing legal remedies, Principal Defendant Norman Nick sent a letter dated September 26, 1989 to the limited partners, in which he falsely stated that the limited partners' interests were not being managed by Bruce or David Greenberg or anyone involved in fraudulent activities. Norman Nick's statements, however, were belied by the filing of a superseding indictment on or about August 21, 1989, against David Greenberg, Bruce Greenberg, Samuel Konigsberg, and Bernard Teitelbaum, and the disclosure in newspaper articles that Bruce and David Greenberg were principals of Video USA, Ltd, the managing agent for the Limited Partnership. Furthermore, in his September 26, 1989 letter, Norman Nick falsely stated that Grodsky, Caporrino & Kaufman, the Limited Partnership's accountants at the time, were unable to complete an audit because postal inspectors had seized relevant documents. According to the complaint, the real reason that the accountants were unable to complete the audit was because Nick, Stephen Cantor, Marvin Greenfield and the General Partners refused to produce certain documents.

On November 16, 1989, Norman Nick and Marvin Greenfield sent another letter to plaintiffs, stating that they intended to install new entities and officers in the Limited Partnerships to "completely sever" all relationships with Video USA, Ltd. The November 16, 1989 letter, however, did not disclose the affiliations of the new entities and officers to the old Video USA, Ltd., and the fact that the changes were only in form, not substance. Nor did the November 16, 1989 letter disclose that Martin Cianciaruso was under investigation for insurance fraud. On November 20, 1989, the superseding indictment was amended to charge Martin Cianciaruso with participating in the insurance fraud conspiracy with Bruce Greenberg, David Greenberg, Konigsberg, and Teitelbaum. On November 30, 1989, Norman Nick and Marvin Greenfield sent a third letter to plaintiffs, containing numerous false statements, including the denial of David Greenberg's involvement in Video USA, Ltd. and the denial that Bernard Teitelbaum had been under indictment at the time he was hired by Equivid, the corporate entity that replaced Video USA Ltd.

Plaintiffs seek a declaration that their Limited Partnership investments are null and void, an order enjoining defendants from engaging in any future sale of securities or other investment instruments, rescission of their purchases of the Limited Partnership interests, compensatory damages amounting to at least their Limited Partnership contri-

butions plus interest and attorney's fees, and punitive damages of not less than $16 million.

## DISCUSSION

### The Primary Defendants

The complaint alleges that the Principals, through the Limited Partnerships, General Partners, Managing Companies, and C & G Ventures (collectively the "Primary Defendants"), (1) established a fraudulent enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(a)–(d); and (2) offered and sold securities by means of an intentionally misleading Offering Memoranda in violation of section 10(b), Rule 10b–5, section 12(2),[6] the Martin Act, and the New York common law of fraud and negligent misrepresentation, and breach of fiduciary duty.

The Primary Defendants move to dismiss the section 10(b) claim for lack of particularity under Rule 9(b) and for failure to state a claim under Rule 12(b)(6); to dismiss the RICO claims for lack of particularity under Rule 9(b) and as time-barred; to dismiss the section 12(2) claim as time-barred; to dismiss the Martin Act claim for lack of a private right of action; to dismiss the claims of negligent misrepresentation and breach of fiduciary duty for lack of particularity; and to dismiss the state law claims for lack of pendent jurisdiction.

### I. Section 10(b) and 10b–5 Claims

■ To state a claim under section 10(b), plaintiffs must allege: (1) material misstatements or omissions, (2) indicating an intent to deceive or defraud (scienter), (3) in connection with the purchase or sale of any security, (4) through the use of interstate commerce or a national securities exchange, (5) upon which the plaintiff detrimentally relied, and (6) that the fraud in fact caused plaintiff's injuries. *Feinman v. Schulman Berlin & Davis*, 677 F.Supp. 168, 170 (S.D.N.Y.1988); *see also Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986).

**6.** The claim under section 12(2) is asserted against all of the Primary Defendants except for

The Primary Defendants argue that the complaint fails to allege scienter with sufficient particularity. This argument does not withstand analysis. Rule 9(b) requires that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Motive, intent, knowledge, and other conditions of mind of a person may be averred generally.

The particularity requirement of Rule 9(b) is designated to provide a defendant with fair notice of plaintiff's claims, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to reduce the number of strike suits. *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

■ Under Rule 9(b), the time, place and nature of the misrepresentations must be set forth with sufficient particularity to reveal the defendants' intent to perpetrate a securities fraud. *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990). Although each determination of compliance with this rule "necessarily rests on its particular facts," *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978), courts in this circuit have usually required a plaintiff to specify:

> (1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud.
>
> *Friedman v. Arizona World Nurseries, Ltd.*, 730 F.Supp. 521, 531 (S.D.N.Y.1990), *aff'd*, 927 F.2d 594 (2d Cir.1991).

■ While a fraud complaint must apprise each individual defendant of the specific nature of his or her participation in the fraud, *Sanderson v. Roethenmund*, 682 F.Supp. 205, 207 (S.D.N.Y.1988), the particularity requirement is somewhat relaxed when the de-

Bernard Teitelbaum.

fendants are "insiders." *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Where "defendants are insiders or affiliates participating in the offer of the securities in question," the complaint need not allege a specific connection between the memorandum's fraudulent representations and particular defendants. *Luce,* 802 F.2d at 55.

Under the relaxed pleading standards applicable to insiders, plaintiffs' claims against the Primary Defendants satisfy Rule 9(b). These defendants, being "[c]orporate officials making stock offerings, general partners offering limited partnerships, and principals in general" are clearly insiders for the purposes of Rule 9(b). *Morin v. Trupin,* 823 F.Supp. 201, 206 (S.D.N.Y.1993) (citing *DiVittorio,* 822 F.2d at 1247). The complaint alleges that in 1984 the Primary Defendants made statements—that the Limited Partnership interests were "a sound and financially suitable investment"—and that the Offering Memoranda contained material misrepresentations and omissions which "defendants knew or had reason to know were false," upon which plaintiffs relied to their detriment.

Furthermore, plaintiffs have provided the Primary Defendants with fair notice of the alleged fraud and a sufficient factual basis for scienter. Although fraudulent intent may be averred generally, a complaint must nevertheless allege facts giving rise to a "strong inference" of scienter, *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993), that is, an actual intent to defraud, knowledge of the falsity, or a reckless disregard for the truth. *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989). One way that plaintiffs may establish scienter is to allege facts showing a motive to commit the fraud and a clear opportunity for doing so. *Beck,* 820 F.2d at 50.

Plaintiffs allege that in 1984 the Principals "developed a plan to sell interests in the Limited Partnerships to plaintiffs and other investors through fraud, misrepresentations and willful omissions designed to conceal material facts regarding the Limited Partnerships." Complaint ¶ 155. Additionally, the complaint alleges that prior to plaintiffs' purchase of the Limited Partnership interests, the Primary Defendants "made representations intended to induce and which did induce the purchases by plaintiffs and other investors." Complaint ¶ 157.

Although the Primary Defendants allegedly represented that "the limited partnership interests being offered were a sound and financially suitable investment," plaintiffs claim that the representations were entirely false and contained material omissions, most significantly the omission to disclose the critical role of defendant David Greenberg and his status as a convicted felon and the fact that Adam Greenberg, the sole director, officer and shareholder of D.A.G. Enterprises, was David Greenberg's twelve year-old son. Finally, the complaint alleges that the "three private placement memoranda and the exhibits to these memoranda each contained various material misrepresentations and omissions which *defendants knew or had reason to know were false* and which plaintiffs relied on to their detriment in their decisions to purchase their limited partnership interests." Complaint ¶ 162 (emphasis added).

The Court finds that plaintiff's section 10(b) fraud allegations against the insider Primary Defendants are pleaded with sufficient particularity to satisfy Rule 9(b). In addition, the Court finds that plaintiffs have stated a claim against the Primary Defendants under section 10(b) and therefore denies their motion to dismiss the claims under Rule 12(b)(6).

## II. Section 12(2) Claims

Section 12(2) of the Securities Act of 1933 provides that any person who:

(2) offers or sells a security ... by means of a prospectus or oral communication which includes an untrue statement of a material fact necessary in order to make the statements, in light of the circumstances in which they were made, not mis-

leading ... shall be liable to the person purchasing such security from him.

15 U.S.C. § 77*l* (2) (1981).

The Primary Defendants have moved to dismiss the section 12(2) claims as time-barred. Section 13 of the Securities Act of 1933 requires that:

> [No] action shall be maintained ... unless brought *within one year* after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... In no event shall any such action be brought to enforce a liability created under section [12(2) ] ... more than *three years after* the sale.

15 U.S.C. § 77m (emphases added).

Plaintiffs allege that they did not discover the fraud until August 21, 1989, when the first of the criminal indictments against the Principals was filed.[7] The complaint was filed on December 21, 1989 and therefore meets the statutory requirement that an action must be commenced within one year of the discovery of the fraud.

Plaintiffs have failed, however, to meet the statutory requirement that an action must be commenced no later than three years from the date of sale. Although neither plaintiffs nor defendants offer any specific dates of sale, it is uncontested that the last date on which plaintiffs could have signed their contracts to purchase securities was September 30, 1986, the closing date of the last Video–USA Offering Memorandum. The Court finds unconvincing plaintiffs' argument that the statute of limitations should not begin to run until the last installment payment is made by each investor. The Second Circuit has clearly held that the statute of limitations for section 12(2) claims runs from the contract of sale, not from the date at which the funds pursuant to the sale are fully transferred. *See Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir.1992) ("[A] sale occurs for section 12(2) purposes when the parties obligate themselves to perform what they have agreed to perform even if the formal performance of their agreement is to be after a lapse of time.") (internal quotation marks and citations omitted).

Because the last possible date on which Video–USA securities could have been sold was September 30, 1986, and because the complaint was filed more than three years after that date, plaintiffs have failed to meet the three-year limitation. Accordingly, the Court dismisses the section 12(2) claims against the Primary Defendants as time-barred.

### III. RICO Claims

Plaintiffs allege that the Primary Defendants engaged in a pattern of racketeering in violation of 18 U.S.C. § 1962(a)–(d).

#### A. Statute of Limitations

█ The Primary Defendants first argue that plaintiffs' RICO claims are time-barred because the complaint was filed more than four years after a November 26, 1985 *New York Post* article that described David Greenberg as the founder and a consultant to Video USA Ltd.

In *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court announced a four-year statute of limitations for civil RICO claims but declined to decide the question of when such civil RICO actions accrue. *Id.*, at 153–57, 107 S.Ct. at 2766–67. In the aftermath of *Agency Holding Corporation*, a circuit split has developed, and as many as a half a dozen conflicting accrual rules have emerged. *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1418, 134 L.Ed.2d 543 (1996) (discussing the circuit split). The Second Circuit has adopted a "separate accrual rule" under which a new civil RICO claim accrues, and a new four-year limitations period is triggered, each time that a plaintiff discovers or should have discovered a new injury caused by the predicate RICO acts. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 & 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989); *see also Cru-*

---

**7.** Although defendants contend that the date of discovery was much earlier, the Court takes plaintiffs' allegations to be true for purposes of this motion to dismiss.

*den v. Bank of New York,* 957 F.2d 961, 977 (2d Cir.1992).

Plaintiffs mention the *New York Post* article in one paragraph of their complaint, but they do not allege that they learned of the fraud from the article. Complaint, ¶ 163. Significantly, the article itself disclosed nothing about David Greenberg's criminal past or anything that would prompt an investor's concern. Even if plaintiffs had discovered certain alleged misrepresentations from reading the *New York Post* article, they may not have discovered the injurious impact of these misrepresentations on their business or property until much later. Resolving, for the moment, all doubts in favor of the pleader in this motion to dismiss, the Court finds that the RICO claims are not time-barred.

## B. Adequacy of Pleadings

■ The Primary Defendants argue that plaintiffs' RICO claims should be dismissed because the predicate acts alleged fail to meet the particularity requirements of Rule 9(b). When fraud forms the basis of a RICO complaint, the fraud alleged must meet the pleading requirements of Rule 9(b). *Turkish v. Kasenetz,* 27 F.3d 23, 27 (2d Cir.1994); *see Ruff v. Genesis Holding Corp.,* 728 F.Supp. 225, 230 (S.D.N.Y.1990). Based on its review of the complaint, the Court finds that plaintiffs have alleged the predicate acts with sufficient particularity. As discussed above, plaintiffs' have adequately pleaded securities fraud claims against the Primary Defendants.

■ Under any prong of section 1962, a civil RICO plaintiff must establish the existence of an enterprise and a pattern of racketeering activity. *GICC Capital Corp. v. Technology Finance Group,* 67 F.3d 463, 465 (2d Cir.1995). The Primary Defendants assert that plaintiffs have failed to allege a RICO enterprise. An enterprise for RICO purposes is "any union or group of individuals associated in fact". 18 U.S.C. § 1961(4). The complaint alleges that defendants coordinated three principal groups for the purpose of perpetrating the fraud: the "Video USA Enterprise," consisting of the Primary Defendants (Complaint ¶ 209); the "Video Retailing Enterprise," involving all of the defendants except Mast Capital (Complaint ¶¶ 220–222); and the "Limited Partnership Enterprise," involving the limited partnerships (Complaint, ¶ 228). Plaintiffs allege that these groups solicited investors, raised capital and managed the companies as part of the overall fraud. Although plaintiffs have alleged the existence of *three* enterprises (one for solicitation of investors, one for running the company, and one for continued funding of the company), it is clear that all were encompassed in the Video USA Enterprise. Accordingly, this Court will presume the existence of but a single enterprise called the Video USA Enterprise. Plaintiffs have thus adequately alleged an enterprise.

■ The Primary Defendants next argue that plaintiffs have not alleged a pattern of racketeering activity. In order to satisfy this element, plaintiffs must plead at least two predicate acts, 18 U.S.C. § 1961(5), and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). "It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (emphasis in original) (citations omitted).

■ Plaintiffs allege numerous predicate acts in their complaint, including, *inter alia,* fraud in the offer and sale of limited partnership interest, mail and wire fraud, insurance fraud, obstruction of justice, and securities fraud. Complaint ¶ 230. It is evident that plaintiffs have alleged sufficient predicate acts.

The Primary Defendants assert that plaintiffs' allegations fail to establish that the predicate acts are related. Proof of two acts of racketeering, without more, does not suffice to establish a RICO pattern, but "[a]n interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways." *See U.S. v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.1989). Such an interrelationship between predicate acts may be established by "proof of their temporal proximity, or common goals, or similarity of methods, or repetitions." *Id.* In the instant case, the Video USA Enterprise

allegedly engaged in mail fraud and securities fraud in offering the various limited partnership interests for sale. The complaint alleges that the repeated frauds, as part of an ongoing and continuous scheme, were related in purpose, participants, and methods of commission. Indeed, under any common sense reading of the complaint, plaintiffs have adequately established that the predicate acts are related.

■■■ The Primary Defendants also assert that plaintiffs have failed to satisfy the continuity element of the pattern requirement. In order to satisfy this requirement, a civil RICO plaintiff "must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct with a threat of future criminal conduct) or a 'close-ended' pattern of racketeering activity (i.e., past criminal activity 'extending over a substantial period of time')." *GICC Capital Corp. v. Technology Finance Group*, 67 F.3d 463, 465 (2d Cir.1995). Plaintiffs allege racketeering activity spanning a period from November 1984 (the first offering memorandum) to November 30, 1989 (date of letter from defendants Nick and Greenfield to plaintiffs allegedly containing numerous false statements).[8] The Court finds that the very nature of the alleged activities, an ongoing, open-ended fraud, satisfies any concerns about the continuity requirement. *See, e.g., Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) ("Periods of 19 or 20 months ... have been held sufficient to support a finding of continuity.").

In sum, the Court rejects the Primary Defendants' motion to dismiss plaintiffs' RICO claims for failure to allege a RICO enterprise or a pattern of racketeering activity.

**8.** Plaintiffs filed this suit on December 21, 1989.

**9.** Section 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(i) Section 1962(c)**

■■■ To state a claim under section 1962(c),[9] plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), that caused injury to plaintiffs' business or property. *Bankers Trust*, 859 F.2d at 1102. As discussed above, plaintiffs have alleged an enterprise and a pattern of racketeering activity. Because the Court finds that plaintiffs have alleged that the Primary Defendants' RICO conduct caused injury to plaintiffs' business or property, the Court concludes that plaintiffs have stated a cause of action against the Primary Defendants under section 1962(c).

**(ii) Section 1962(b)**

■■■ A plaintiff alleging a violation of section 1962(b)[10] must allege that an enterprise existed affecting interstate commerce and that the defendant acquired or maintained an interest in or control over the enterprise through a pattern of racketeering activity. *Trautz v. Weisman*, 809 F.Supp. 239, 245 (S.D.N.Y.1992). To state a claim under section 1962(b), plaintiffs must allege a proximate causal relationship between an acquisition of an interest in an enterprise and the damages claimed. *Metromedia v. Fugazy*, 983 F.2d 350, 368 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

■■■ As discussed above, plaintiffs have adequately alleged a RICO enterprise and a pattern of racketeering activity. Plaintiffs have also pleaded that they were injured in their business or property as a result of defendants' acquisition or maintenance of an interest in or control of an enterprise

18 U.S.C. § 1962(c).

**10.** Section 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
18 U.S.C. § 1962(b).

through a pattern of racketeering. Complaint, ¶ 218. Accordingly, the Court declines to dismiss the section 1962(b) claim against the Primary Defendants.

### (iii) Section 1962(a)

■ Section 1962(a) prohibits the use or investment of income received from a pattern of racketeering activity in the acquisition, establishment or operation of an enterprise affecting interstate commerce. A violation of this provision thus consists, not in the commission of the predicate acts themselves, but in *using or investing* the proceeds derived from a pattern of racketeering activity. *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir.1990). To state a claim under section 1962(a), plaintiffs must plead an injury proximately caused by the investment of the racketeering proceeds. *Id.* (holding that "the essence of a violation § 1962(a) is not commission of predicate acts but investment of racketeering income").

■ In the complaint, plaintiffs allege that the Primary Defendants engaged in a series a fraudulent activities to induce them to purchase the limited partnership interests. In addition, plaintiffs allege that, after the sale of the limited partnership interests, the Primary Defendants misappropriated significant portions of the limited partnership contributions by paying themselves purported management fees, start-up fees, broker fees, and commissions. Complaint, ¶ 213. Plaintiffs allege that they suffered an injury because the Primary Defendants misappropriated the limited partnerships' funds. Because plaintiffs allege an injury caused by the Primary Defendants' investment of the proceeds from the sale of the limited partnership interests, they have stated a claim under section 1962(a). Accordingly, the Court declines to dismiss the section 1962(a) claim against the Primary Defendants.

### (iv) Section 1962(d)

■ Finally, plaintiffs assert a claim under section 1962(d) alleging a conspiracy among the defendants. Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). A section 1962(d) violation requires only a particular defendant's *agreement* to commit two or more predicate acts in furtherance of a RICO conspiracy rather than the actual commission of the crimes themselves. *United States v. Teitler*, 802 F.2d 606, 613 (2d Cir.1986).

■ The Primary Defendants move to dismiss plaintiffs' section 1962(d) claim for failure to state a claim. The complaint alleges that by participating in the activities set forth in "paragraphs 408 and 128–202, *supra* defendants have conspired to engage in an illegal 'pattern of racketeering activity' in connection with the Video USA enterprise." Complaint ¶ 234. The complaint fails, however, to adequately allege that each defendant personally agreed to commit two or more of the predicate acts. *Reinfeld v. Riklis*, 722 F.Supp. 1077, 1084 (S.D.N.Y.1989) (allegations that defendants "committed, caused to be committed, or agreed to the commission of the predicate crimes alleged" found insufficient to state a claim under section 1962(d)); *see also, In Re Integrated Resources Real Estate*, 850 F.Supp. 1105, 1149 (S.D.N.Y.1993) ("[A]llegations that do not include an agreement by a conspirator to commit two or more predicate acts cannot form the basis of a claim for RICO conspiracy in this Circuit [and] cannot survive a motion to dismiss."). Accordingly, the Court dismisses the section 1962(d) claim against the Primary Defendants.

### IV. State Law Claims

#### A. Martin Act Claim

■ Plaintiffs assert that the Primary Defendants violated the Martin Act by making false statements and material misrepresentations in connection with the sale of securities. The New York Court of Appeals, however, has clearly held that no private right of action, express or implied, exists under the Martin Act. *CPC Int'l, Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 519 N.Y.S.2d 804, 806–07, 514 N.E.2d 116, 117–19 (Ct.App.1987); *see also The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 397 (S.D.N.Y.1988) ("Any doubt as to the availability of a private remedy under [the Martin

Act] was recently dispelled by the New York Court of Appeals.") (citing *CPC Int'l*). Therefore, the Court dismisses plaintiffs' Martin Act claim against the Primary Defendants.

### B. Common Law Fraud, Negligence, Breach of Fiduciary Duty

 The Primary Defendants move to dismiss plaintiffs' state law claims for lack of pendent jurisdiction. Because the Primary Defendants are already subject to this Court's jurisdiction on plaintiffs' securities and RICO claims and because the state law claims arise from a common nucleus of operative facts, the Court retains jurisdiction over the pendent state claims for fraud, negligent misrepresentation, and breach of fiduciary duty. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[11] The Court therefore denies the Primary Defendants' motion to dismiss these claims.

Finally, the Primary Defendants argue that plaintiffs' have not pleaded their claims of negligent misrepresentation and breach of fiduciary duty with sufficient particularity. Based on its review of the complaint, the Court finds that plaintiffs have pleaded negligent misrepresentation and breach of fiduciary duty with sufficient particularity.

### *The Accountant Defendants*

Plaintiffs allege that Touche Ross, Cianciaruso, Friedman, and Cohen (collectively "Touche Ross") participated in defendants' fraudulent scheme in several ways. First, the complaint alleges that Touche Ross provided accounting, auditing, and financial analysis to defendants in preparation of the Offering Memoranda. Specifically, plaintiffs allege that Touche Ross permitted the Principal Defendants to use the firm's reputation by representing in the Offering Memorandum that Touche Ross had been retained to recommend internal controls and that it

would conduct annual audits of the Limited Partnerships. Second, plaintiffs allege that Touche Ross intentionally or recklessly omitted to disclose the following material facts in violation of section 10(b): the involvement of David Greenberg, the fact that he was a convicted felon, the fact that Adam Greenberg, the sole officer, director and shareholder in D.A.G. Enterprises, Inc., was David Greenberg's twelve-year-old son, the inflated invoices, the insurance fraud scheme, and defendants' efforts to deter plaintiff from pursuing their legal remedies. Third, the complaint alleges that Touche Ross violated section 10(b) when it prepared the financial projections attached as exhibits to the Offering Memoranda with the knowledge that prospective investors would rely on them. The complaint also alleges that Touche Ross aided and abetted the Primary Defendants in their fraudulent scheme in violation of section 10(b). Plaintiffs allege that Touche Ross engaged in a pattern of racketeering activity in violation of the RICO statute, 18 U.S.C. § 1962(a)–(d). Plaintiffs also allege that Touche Ross indirectly and directly participated in the sale of securities by fraudulent means in violation of section 12(2) and the Martin Act. Finally, plaintiffs assert fraud, negligent misrepresentation, and breach of fiduciary duty claims against Touche Ross.

Touche Ross, Deloitte & Touche, Alan Friedman and Jerry Cohen move to dismiss the section 10(b) claim as time-barred, for insufficient particularity under Rule 9(b), and for failure to state a claim.[12] Touche Ross also moves to dismiss the section 12(2) claim as time-barred; to dismiss the RICO claims for failure to state a claim and for lack of standing; and to dismiss the state law claims for lack of pendent jurisdiction.

### I. Section 10(b) Claim
### A. Statute of Limitations

 Touche Ross first argues that plaintiffs' section 10(b) and Rule 10b–5 securities

---

**11.** Although *Gibbs* was superseded by 28 U.S.C. § 1367, section 1367 applies only to actions commenced on or after December 1, 1990. Because plaintiffs filed this action on December 21, 1989, it is governed, not by section 1367, but by the prior common law of pendent and ancillary jurisdiction.

**12.** Although the complaint states that Martin Cianciaruso was employed by Touche Ross from 1984 until April 1986 and asserts claims against him in his role as a Touche Ross employee, Touche Ross does not move to dismiss the claims against him in his capacity as a Touche Ross employee.

claims ("section 10(b) claims") are time-barred under the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). In *Lampf,* the Supreme Court held that all private claims arising under section 10(b) must be commenced within one year of the discovery of the fraud and no later than three years after the transaction. *Lampf,* at 360–64, 111 S.Ct. at 2781–82. Plaintiffs brought this action on December 21, 1989, more than three years after Touche Ross's alleged violations occurred.[13] Therefore, if *Lampf*'s one year/three year limitations period applied retroactively, plaintiffs' section 10(b) claims would be time-barred. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 967 F.2d 742, 751 (2d Cir.1992).

However, following the parties' filing of supplemental briefs on this issue, Congress amended the 1934 Act by enacting section 27A to bar the retroactive application of *Lampf.* Federal Deposit Insurance Corporation Improvement Act of 1991 § 476, Pub.L. 102–242, 105 Stat. 2236, 2387 (Dec. 19, 1991). Section 27A provides:

> The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

*Id.* The limitation period for the present action is therefore subject to the Second Circuit law in effect on June 19, 1991.

The present action was commenced on December 21, 1989. On November 8, 1990, in *Ceres Partners v. GEL Assoc.,* 918 F.2d 349, 361 (2d Cir.1990), the Second Circuit adopted the three year/one year limitation period for section 10(b) actions. The issue, then, is whether the limitations period established by the Second Circuit in *Ceres* applies retroactively to this case. Courts in this circuit have consistently held that *Ceres* does not apply retroactively to claims filed before November 8, 1990. *See In re Boesky Securities*

*Litigation,* 882 F.Supp. 1371, 1380–83 (S.D.N.Y.1995) (Pollack, J.); *In re Colonial Ltd. Partnership Litigation,* 854 F.Supp. 64, 81–82 (D.Conn.1994) (Cabranes, J.) ("[T]he law of this Circuit provides three distinct periods of limitations for section 10(b)(5) claims, depending on when an action was filed: (1) the *Lampf* one year/three year rule for cases filed after June 19, 1991; (2) the *Ceres* one-year/three-year rule for cases filed between November 8, 1990 and June 19, 1991; and (3) the 'borrowed' [state] rule for cases filed prior to November 8, 1990.") (footnote omitted); *In re Integrated Resources Real Estate,* 850 F.Supp. 1105, 1132 (S.D.N.Y.1993) (Sweet, J.) ("All securities claims filed in the Southern District of New York before November 8, 1990 will be governed by the Second Circuit's prior practice of borrowing the most analogous state statute of limitations for the § 10(b) claims.") (citation omitted).

Accordingly, plaintiffs' claims in the present case, which were filed before November 8, 1990, are not subject to the one-year/three-years limitations period of *Ceres* but are instead subject to the pre-*Ceres* limitations period of the forum state. In New York, the prevailing pre-*Ceres* limitations period for actions brought under section 10(b) was six years from the date of discovery. *Azurite Corp. Ltd. v. Amster & Co.,* 730 F.Supp. 571, 582 (S.D.N.Y.1990). Because plaintiffs filed the complaint within six years of the last Offering Memorandum, the section 10(b) claims are not barred by the statute of limitations, and defendants' argument to dismiss these claims for untimeliness fails.

### B. Primary Liability

■ The complaint first alleges that Touche Ross "permitted [the other defendants] to trade on and use Touche Ross's name and established reputation by stating in these offering memoranda that Touche Ross (i) had recommended internal controls to protect the value of the limited partnership interests [and] (ii) would be involved in overseeing these internal controls and would provide annual audits of the Limited Part-

---

**13.** The last Offering Memorandum was dated April 7, 1986, and the closing date of that offering was September 30, 1986.

nerships." Complaint ¶ 247. It is not at all clear from the complaint whether plaintiffs are alleging that Touche Ross made the statement in the Offering Memoranda or whether they are alleging that Touche Ross permitted other defendants to make the statement. This confusion persists in plaintiffs' opposition to defendants' motion to dismiss. At one point in their opposition, plaintiffs summarize the allegations of paragraph 247 of the Complaint as follows: "The first group of misrepresentations consists of the Touche Ross defendants' false statements in the private placement memorandum that they recommended internal controls and would be retained by the limited partnership to assist management in implementing the internal controls and a management reporting system." Opposition motion at 20. Two pages later, plaintiffs assert "plaintiffs in our case allege that the accountants acquiesced in permitting the use of a statement that Touche Ross had agreed to perform internal controls, management reporting and internal audits." *Id.* at 22. The statement relied on by plaintiffs reads, "Touche Ross & Co., has recommended the following internal controls and will be retained by the Partnership to assist management in implementing the Partnership's internal controls and management reporting system." Despite plaintiffs' confusing statements in their motion papers, it is evident that this statement in the Offering Memoranda was prepared by the management.[14]

Even if Touche Ross did not directly make these misrepresentations, plaintiffs argue that it is liable under section 10(b) because it was responsible for the misrepresentations disseminated by the management, citing, *In re Union Carbide Corp. Consumer Products Business Securities Litigation,* 676 F.Supp. 458 (S.D.N.Y.1987) (*"Union Carbide"*). In *Union Carbide,* Morgan Stanley argued that it could not be liable for allegedly misleading financial forecasts contained in the documents filed with the Securities and Exchange Commission because the documents were prepared by Union Carbide. Rejecting Morgan Stanley's argument, the court held that "[p]reparation of misleading projections or provision of raw data for such projections can constitute direct participation in a misrepresentation." *Id.* at 468–69. The Court concludes that *Union Carbide* is distinguishable. Unlike the alleged misrepresentations involving financial projections in *Union Carbide,* the alleged misrepresentation in this case concerned the future conduct of a retained professional whose engagement could have been terminated at any time by either party. Accordingly, the Court holds that the statement cannot from the basis for a section 10(b) claim.

█ Plaintiffs next allege that Touche Ross "performed financial projections which were summarized in exhibits prepared by Touche Ross which were appended to and incorporated in the offering memoranda with the knowledge and intent on the part of these defendants that prospective purchasers of the limited partnerships would rely on these projections." ¶ 248. Although this paragraph appears under the Seventh Cause of Action that is labelled the section 10(b) and Rule 10b–5 claim, the vaguely worded claim does not specifically allege how the defendants violated section 10(b) by performing financial projections. Obviously, the mere act of performing financial projections with the knowledge that they will be relied on by prospective purchasers does not, without more, violate section 10(b). A reading of the complaint as a whole reveals that plaintiffs are alleging that the financial projections included in the Offering Memoranda contained material misrepresentations and omissions. Complaint, ¶ 162, 274.

It is well established that a party may not held liable under section 10(b) on the basis of statements in offering documents that "clearly bespeak caution." *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986). For each of the three Offering Memoranda, Touche Ross prepared a one-page letter describing its fi-

---

**14.** The Court notes that the statement appears on page 24 of the first Offering Memorandum and is juxtapositioned between a discussion of competition in the video store industry and a description of the management. (The statement appears on pages 25 and 28 of the second and third Offering Memoranda, respectively.) Plaintiffs do not, and indeed cannot, explain why Touche Ross would draft two sentences in the midst of the Offering Memoranda drafted by the management.

nancial projections. Although not identical, all three letters contain similar phrases and much of the same cautionary language. For example, Touche Ross stated that the projections were based on facts and assumptions supplied by Video USA Ltd., and that "the actual results achieved . . . will vary from the projection, and the variation may be material." Touche Ross did "not express a conclusion or any form of assurance on the accompanying statements or assumptions." Moreover, the Offering Memoranda themselves expressly cautioned that the projections were "to the best of management's knowledge and belief" and were "not intended to represent an estimate of future financial results."

In light of this cautionary language, plaintiffs could not have reasonably relied on the financial statements, and Touche Ross cannot be held liable under section 10(b) for those statements. *See Luce*, 802 F.2d at 56 (affirming Rule 12(b)(6) dismissal of plaintiffs' section 10(b) claim based on projections in offering documents because statements made it clear that projections were speculative in nature and specifically warned that "[a]ctual results may vary from the predictions and these variations may be material"); *Haberkamp v. Steele*, 1992 WL 84544, *13 (S.D.N.Y. April 15, 1992) (holding that plaintiffs failed to state a claim against accountant defendants based on projections contained in the limited partnership offering memorandum because the accountants' statements expressly warned that "the projections were based on assumptions provided by the Partnership and that the accountants expressed no opinion on the projections"); *Stevens v. Equidyne Extractive Industries 1980*, 694 F.Supp. 1057, 1063–64 (S.D.N.Y.1988) (granting Rule 12(b)(6) motion to dismiss claim against accountant based on financial projections because accountant's cover letter stated that the projections were "based on supplied facts" and that there was "no implication that the results predicted can or will be achieved"). Accordingly, the Court dismisses the section 10(b) claim based on the financial projections for failure to state a claim.

 Plaintiffs next allege that Touche Ross violated section 10(b) by failing to disclose the following material facts: the secret role of David Greenberg, David Greenberg's felony conviction, the fact that the sole officer, director, and shareholder of D.A.G. Enterprises, Inc. was the twelve-year-old son of David Greenberg, the preferential allocations, the fraudulent invoice scheme, the insurance frauds, and defendants' fraudulent conduct designed to deter plaintiffs from seeking to rescind their purchases or pursuing their legal remedies. Complaint ¶ 251. A party is not liable for failure to disclose material information under section 10(b) unless he is under a duty to do so. *Chiarella v. United States*, 445 U.S. 222, 226, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980). A duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Id.* (citations omitted). It is well established that:

> [A]n accounting firm has no duty to disclose fraudulent misconduct . . . under Section 10(b) where it has not given some representation or certification, such as an opinion or certified statement, or has not invited the public to rely on the firm's financial judgment at the time.

*In re Gas Reclamation Inc., Securities Litigation*, 659 F.Supp. 493, 505 (S.D.N.Y.1987). *See also In re Cascade Int'l Securities Litigation*, 894 F.Supp. 437, 443 (S.D.Fla.1995) ("[I]f an accountant does not issue a public opinion about a company, although it may have conducted internal audits or reviews for portions of the company, the accountant cannot subsequently be held responsible for the company's public statements issued later merely because the accountant may know those statements are likely untrue."); *In re AM Int'l, Inc. Securities Litig.*, 606 F.Supp. 600, 606 (S.D.N.Y.1985); *Gold v. DCL, Inc.*, 399 F.Supp. 1123 (S.D.N.Y.1973).

 In the present case, Touche Ross did not issue an opinion or certification or take part in the preparation of the prospectus. Instead, Touche Ross's "engagement" with Video USA was clearly limited to its preparation of a one-page compilation report, which, as discussed above, contained very

cautionary language.[15] Therefore, Touche Ross was under no duty to disclose material information to the plaintiffs and may not be held liable for failure to disclose management's misrepresentations.

■ The complaint also alleges that Touche Ross failed to disclose that various general partners would be paid "preferential allocations" for managing Video USA. Complaint, ¶ 252–253. This failure to disclose claim fails because Touche Ross owed no duty to plaintiffs to disclose material information. Even if Touche Ross had a duty to disclose the preferential allocations, the Court notes that this claim would fail because the Offering Memoranda fully disclosed the subject payments. *See* Exhibits 8–10. *See, Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 115–18 (2d Cir.1982) (holding that investor cannot state a claim under section 10(b) if the facts upon which an investor claims reliance were fully disclosed in the offering document).[16]

■ Plaintiffs also allege that Touche Ross participated in a scheme to prevent them from pursuing their legal remedies. Because this scheme allegedly took place *after* the public offerings of 1984–86 and therefore could not have affected the investors' decisions to purchase Limited Partnership interests, such tactics could not have induced plaintiffs to buy the securities. The Court therefore finds that plaintiffs cannot establish the requisite causation; that is, plaintiffs cannot demonstrate a direct or proximate

relationship between the loss and the scheme to prevent legal action by the investors. *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 314 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). For the foregoing reasons, the Court dismisses plaintiffs' section 10(b) and Rule 10b–5 claims against Touche Ross.[17]

### C. Secondary Liability

■ The complaint alleges that Touche Ross is liable as an aider and abettor under section 10(b). In *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, ——, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994), the Supreme Court held that a private plaintiff may not maintain an aiding and abetting suit under § 10(b). Accordingly, the Court dismisses plaintiffs' section 10(b) aiding and abetting claims against Touche Ross.

### II. Section 12(2) Claim

■ For the reasons stated above, the Court dismisses plaintiffs' section 12(2) claims against Touche Ross as time-barred. Even if the section 12(2) claims were not barred by the statute of limitations, the Court would dismiss the claims against Touche Ross because it was not a statutory "seller" under section 12(2). *Pinter v. Dahl,* 486 U.S. 622, 642–50, 108 S.Ct. 2063, 2076–79, 100 L.Ed.2d 658 (1988); *see also Wilson v. Saintine Exploration and Drilling Corp.,*

---

15. Plaintiffs also allege that Touche Ross undertook auditing services for Video USA. Even taking plaintiffs' allegation to be true, as the Court must in this motion to dismiss, Touche Ross would still have no duty to disclose. There is "no basis in principle or authority for extending an auditor's duty to disclose beyond cases where the auditor is giving or has given some representation or certification." *Gold,* 399 F.Supp. at 1127. *See also Grimm v. Whitney–Fidalgo Seafoods, Inc.,* 1973 WL 495, *4 (S.D.N.Y. Dec. 4, 1973) (finding that accountant that served as independent auditor had no duty to disclose because it "issued no public opinion, rendered no certification, and in no way invited the public to rely on its financial judgment").

16. In their opposition papers, plaintiffs concede that the Offering Memoranda disclosed the subject payments but nevertheless argue that Touche

Ross violated section 10(b) because the payments were falsely described as management, consulting, and brokerage fees when no such services were ever actually performed. Although not clear from the complaint, the gist of this argument, as recast by plaintiffs in their motion papers, appears to be that Touche Ross failed to disclose that certain individuals would be looting or wasting the partnerships' assets after plaintiffs purchased their interests. Again, this argument fails because Touche Ross owed no duty to disclose.

17. Touche Ross also argues that the section 10(b) claims must be dismissed for failure to meet the particularity requirements of Rule 9(b) or for failure to adequately plead loss causation. Because dismissal is clearly warranted for the grounds discussed above, the Court does not address these additional arguments.

872 F.2d 1124, 1125 (2d Cir.1989) ("[S]tatutory sellers [are] only those who actually solicit the sale of securities for financial gain.").

### III. RICO Claims

■ The only predicate acts of racketeering activity specifically alleged to have been committed by Touche Ross are its misrepresentations and omissions which plaintiffs claim constituted "fraud in the sale of securities," and involved mail fraud and wire fraud. Because the fraud claims against Touche Ross are dismissed for failure to state a claim, the RICO claims must be dismissed for failure to adequately plead predicate acts. *Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777 (2d Cir.1989) ("[T]he failure of [plaintiff's] substantive [fraud] claims means that there are no predicate acts to support a RICO claim."), *cert. denied,* 493 U.S. 835, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989).

### IV. State Claims

■ Because the Court has dismissed all of plaintiffs' federal claims against Touche Ross and because there is no independent jurisdictional basis for plaintiffs' remaining state law claims against Touche Ross, the Court dismisses them. *Finley v. United States,* 490 U.S. 545, 554–58, 109 S.Ct. 2003, 2010–11, 104 L.Ed.2d 593 (1989); *see also* 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3567.2 (2d ed. 1984 & 1995 Supp.).[18]

### The Broker/Dealer Defendant

Plaintiffs allege that Mast Capital made material misrepresentations and omissions in order to induce plaintiffs to invest in the limited partnerships. Complaint, ¶ 238. Specifically, plaintiffs allege that Mast Capital failed to disclose David Greenberg's involvement, his felony conviction, and the status of Adam Greenberg. Complaint, ¶ 240. In addition, plaintiffs allege that Mast Capital made material misrepresentations and omissions to discourage plaintiffs from seeking to rescind their purchases and from pursuing legal remedies. Complaint, ¶ 241.

Mast Capital moves to dismiss plaintiffs' section 10(b) claims for lack of particularity under Rule 9(b) and for failure to state a claim under Rule 12(b)(6); to dismiss the RICO claims for insufficient particularity under Rule 9(b) and as time-barred; to dismiss the section 12(2) claim for failure to state claim and as time-barred; to dismiss the Martin Act claim for lack of a private right of action; and to dismiss the state claims in general for lack of pendent jurisdiction.

### I. 10(b) claims

#### A. Primary Liability

■ Mast Capital moves to dismiss plaintiffs' section 10(b) claims for failure to plead fraud with sufficient particularity under Rule 9(b). Because Mast Capital was not an insider and because the complaint does not allege any specific facts indicating that Mast Capital attained insider status, the claims against it for securities fraud are not subject to relaxed Rule 9(b) pleading standards. *See Morin v. Trupin,* 823 F.Supp. 201, 206 (S.D.N.Y.1993) (holding that independent contractors are generally not considered insiders in the absence of specific allegations of insider status) (citations omitted). Accordingly, to state a section 10(b) claim against Mast Capital, plaintiffs must allege, to a reasonable degree, the time, place and nature of the misrepresentations, and set forth facts with sufficient particularity to reveal the defendants' intent to perpetrate a securities fraud. *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990); *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990).

■ Plaintiffs allege that Mast Capital served as the broker/dealer in the offer and sale of interests in the Limited Partnerships and that it helped prepare the Offering Memoranda. Notably absent from the complaint are any specific allegations linking Mast Capital to the alleged misrepresentations or omissions in the Offering Memoranda or allegations giving rise to the "strong inference" that Mast Capital knew the statements to be false, *Wexner,* 902 F.2d at 173, or that it

---

18. *Finley* was overruled by 28 U.S.C. § 1367. However because the present action was commenced prior to December 1, 1990, the effective date of section 1367, *Finley* and other case law prior to section 1367 govern.

intended to defraud plaintiffs. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993); *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990). Accordingly, the Court holds that the allegations that Mast Capital participated in the preparation of the Offering Memoranda are insufficient to support the "strong inference" of fraudulent intent required under Rule 9(b). Similarly, the allegation that Mast Capital brokered the sale of interests in the Limited Partnerships does not sufficiently plead fraudulent intent. *See Devaney v. A.P. Chester*, 813 F.2d 566, 568 (2d Cir.1987) (allegation that Salomon Brothers was retained to assist in the sale of the AMI company and distributed the allegedly misleading AMI prospectus did not adequately state scienter for Rule 9(b) purposes, absent allegations of when, how, or why anyone at Salomon Brothers should have known that the statements in the prospectus were false or misleading). The Court therefore dismisses the section 10(b) claims against Mast Capital for lack of particularity under Rule 9(b).

### B. Secondary Liability

 As discussed above, plaintiffs cannot assert an aiding and abetting claim under section 10(b). *Central Bank of Denver*, 511 U.S. at ——, 114 S.Ct. at 1448. Accordingly, the Court dismisses plaintiffs' aiding and abetting claims against Mast Capital.

### II. Section 12(2) Claim

 For the reasons discussed above, the Court dismisses plaintiffs' section 12(2) claims against Mast Capital as time-barred. Even if the section 12(2) claims were not time-barred, the Court would dismiss them as against Mast Capital because it is not a statutory "seller" under section 12(2). *Pinter v. Dahl*, 486 U.S. 622, 647, 108 S.Ct. 2063, 2079, 100 L.Ed.2d 658 (1988); *Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1126–27 (2d Cir.1989).

### III. RICO Claims

 The only predicate acts of racketeering activity specifically alleged to have been committed by Mast Capital are its misrepresentations and omissions that plaintiffs claim constituted "fraud in the sale of securities," and involved mail fraud, and wire fraud. Having dismissed the fraud claims against Mast Capital for failure to state a claim, the Court dismisses the RICO claims against Mast Capital for failure to adequately plead predicate acts.

### IV. State Claims

 Because the federal claims against Mast Capital have been dismissed, the Court dismisses the state law claims against them as well. *Finley*, 490 U.S. at 554–58, 109 S.Ct. at 2010–11.

### V. Leave to Amend

Plaintiffs request leave to amend their complaint to replead any claims that the Court dismisses. The Court has already permitted plaintiffs to file one amended complaint, but, as plaintiffs observe, this amended complaint merely added additional plaintiffs and did not alter the substantive allegations. Leave to amend should be freely granted, especially where the dismissal of the complaint was based on Rule 9(b). *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir.1995); Fed.R.Civ.P. 15(a). Accordingly, the Court grants plaintiffs' leave to replead the section 10(b) claims based on primary liability and the RICO claims against Mast Capital. If plaintiffs replead these claims, the Court will reconsider its dismissal of the state law claims against Mast Capital for lack of pendent jurisdiction.[19] The Court finds that it would be futile to permit plaintiffs to replead the other dismissed claims and therefore denies plaintiffs' request to amend their complaint with respect to the other dismissed claims.

### CONCLUSION

The Court summarizes its rulings with respect to plaintiffs' claims against the Primary Defendants: the section 10(b) claims are not dismissed; the section 12(2) claim is dismissed as time-barred; the 1962(d) RICO

---

19. Even if the Court exercised pendent jurisdiction over the state law claims against these de-fendants, it would dismiss the Martin Act claim for lack of a private cause of action.

claim is dismissed for failure to state a claim; the section 1962(a), 1962(b), and 1962(c) RICO claims are not dismissed; the Martin Act claim is dismissed for lack of a private cause of action; and the remaining state law claims are not dismissed. The Court makes the following rulings with respect to the Accountant Defendants: the section 10(b) claims based on primary liability are dismissed for failure to state a claim; the section 10(b) aiding and abetting claims are dismissed for lack of a private cause of action; the section 12(2) claim is dismissed as time-barred; the RICO claims are dismissed for failure to plead adequate racketeering acts; and the state law claims are dismissed for lack of pendent jurisdiction. With respect to Mast Capital, the Court dismisses the section 10(b) claims based on primary liability for failure satisfy the pleading requirements of Rule 9(b), dismisses the section 10(b) aiding and abetting claims for lack of a private cause of action, dismisses the section 12(2) claim as time-barred, dismisses the RICO claims for failure to plead sufficient racketeering acts, and dismisses the state law claims for lack of pendent jurisdiction.

Finally, the Court grants plaintiff leave to amend their complaint to replead the section 10(b) and RICO claims against Mast Capital. The amended complaint must be filed by July 8, 1996.

SO ORDERED.